No. 14928

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

FORREST JORDAN SMITH,

Defendant and Appellant.

Appeal from: District Court of the First Judicial District,
Honorable Gordon Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Harold H. Harrison argued, Helena, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Chris Tweeten argued, Assistant Attorney General,
Helena, Montana
Charles Graveley argued, County Attorney, Helena,
Montana

Submitted: February 19, 1980

Decided: MAR 27 1980

Filed: MAR 27 1980

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Defendant was convicted in the District Court of the First Judicial District of the crime of sexual intercourse without consent and was sentenced to ten years in the Montana State Prison, with the last nine years suspended. Defendant appeals from the above conviction and judgment.

This case arose from a complaint filed by Mary Rose Cloninger alleging that defendant forced her to engage in sexual intercourse in the early morning hours of August 4, 1978. There is no dispute that on that morning the defendant and the complainant engaged in sexual intercourse. The sole issue at trial was whether the act was committed without consent.

Evidence taken during the trial revealed that the prosecutrix, a former barmaid, and defendant had known each other for a period of approximately ten years; that during their teenage years the prosecutrix had often telephoned defendant and was familiar with defendant's voice on the telephone; that during those years they were on many occasions alone together; that both the prosecutrix and defendant were involved in rodeo activities as were their respective families; that defendant had previously gone with the prosecutrix's younger sister Carrie for about a year; that Carrie had never complained to the prosecutrix of defendant making any untoward or insulting approaches to her; and that at the time of trial Carrie was still quite friendly with defendant and vehemently objected to her sister's rape charges, as did other members of the family.

With respect to the incident out of which the present case arose, the testimony of the prosecutrix indicates that between 3:30 and 4:00 a.m. on August 4, 1978, defendant

-2-

telephoned the prosecutrix and told her that he was at a party and asked if she would cook breakfast for him. She agreed to do so, and defendant arrived at her residence shortly thereafter. She had not dressed and was wearing only a light, clinging robe and nothing else.

After breakfast the prosecutrix testified she offered to allow defendant to use a spare bedroom. She testified she did this because she knew defendant had to be at work at 7:00 that morning at a location relatively close to the Cloninger residence. When she was showing him to the room, the defendant made a sexual advance at the prosecutrix, which she rebuffed. She then returned to her bedroom. A few minutes later, defendant entered her bedroom and forcibly accomplished an act of sexual intercourse with her. She testified that she screamed and struggled, but ceased her resistance because of fear for her safety. This fear stemmed in part from a previous incident where defendant had allegedly assaulted her physically for calling him a "son-of-a-bitch."

Defendant's story is consistent with the prosecutrix's testimony up to the point where she offered to allow defendant to sleep at her house. According to defendant, he had been drinking in a bar for several hours and had then gone to a house party at the home of a friend. He testified that he considered himself to have been drunk. He called the prosecutrix because he desired some female companionship for the night, though he admitted that there were no previous instances of sexual relations between them. He testified that he went over to the prosecutrix's house after his request for breakfast was granted.

According to defendant, when Ms. Cloninger offered to allow him to sleep at her house, she told him he could sleep

anywhere he wanted to, and then she went to bed; that she did not take him to any room; that he was completely familiar with the layout of the house; that it would not have been necessary for her to show him the location of any room; that he took his shoes and socks off in the kitchen, went into the bedroom through a door that was open and lifted up the covers and crawled into bed beside her; that he still had his shirt and pants on; that they started necking and he kissed her on the lips, neck, nipples and unzipped her bathrobe all the way; that she offered no objection to any of this; that she did not cry or scream; that he took his clothes off in the course of which he unbuckled his belt and undid his buttons and zipper and pushed his pants down; that during all that time he was not holding her in any way except that he had his arm around her; that she did not object or resist in any way, nor did she ever tell him to stop; that she responded to him and he completed the sex act with her and she appeared to cooperate; that when it was over he was laying beside her and they started talking; that the prosecutrix was talking about her boyfriend Ed and stated that "after he went to college this fall that we could start going out"; that defendant told her that he had never mentioned anything about going out together and that with this she became very angry and told defendant to "get the hell out of the house, you son-of-a-bitch"; that with respect to the doctor later finding a little redness around her wrist that he did not hold her wrist, pinch it or anything of that sort; and, that when he left the home of the prosecutrix that morning, he had no suspicion whatever that she would accuse him of rape.

The prosecutrix did not phone for help upon the departure of defendant but showered and went to a girlfriend's house, Diane Trankel, and from there, some time later, the authorities were called.

The following issues are presented to this Court for review:

1. Is the evidence sufficient to support the verdict?

2. Did the trial court err in refusing defendant's cautionary instruction that "the crime of sexual intercourse without consent is easy to charge and difficult to refute"?

3. Did the trial court err in refusing to instruct the jury on the statutory prohibition against introduction of the victim's prior sexual conduct?

4. Did the trial court err in refusing to instruct the jury that knowledge of the victim's lack of consent is an element of the offense of sexual intercourse without consent?

5. Did the trial court's instructions improperly "give undue prominence" to the State's case?

6. Did the trial court err in giving Instruction Nos. 7, 8, and 10 on the ground that the instructions were irrelevant to the issues and evidence presented?

This case, like so many others, is close. The very fact that the "consent" or the very case itself is hotly contested and rests solely on the testimony of the prosecutrix or one person and remains uncorroborated puts a hard burden on the trial court insofar as a directed verdict is concerned, or on this Court on sufficiency of evidence. The law is almost as close as the facts in these matters.

Initially, defendant alleges that the court erred in denying defendant's motion for a directed verdict of acquittal. He contends that various inconsistencies make the

prosecutrix's version of the facts inherently improbable.
The evidence was therefore insufficient to convict. Defendant submits that in the trial of cases of alleged rape, the court should view evidence over and above the substantial evidence rule applicable in other cases to determine whether or not evidence of the alleged crime is inherently improbable. De Armond v. State (Okla.Cr. 1955), 285 P.2d 236; State v. Shouse (1953), 57 N.M. 701, 262 P.2d 984; State v. Richardson (1944), 48 N.M. 544, 154 P.2d 224. Defendant also cites Montana cases which support the inherently improbable test to determine sufficiency of the evidence in rape cases. State v. Moe (1923), 68 Mont. 552, 219 P. 803; State v. McIlwain (1921), 60 Mont. 598, 201 P. 270.

The State contends there is nothing inherently improbable about the scenario presented by the prosecutrix. It argues that this case falls into the class of cases typified by State v. Peterson (1936), 102 Mont. 495, 59 P.2d 61, and State v. Gaimos (1916), 53 Mont. 118, 162 P. 596, where the testimony of the prosecutrix, although impeached to an extent, was internally consistent and worthy of belief by a jury so inclined.

Section 46-16-403, MCA, provides:

"When, at the close of the state's evidence or at the close of all the evidence, the evidence is insufficient to support a finding or verdict of guilty, the court may, on its own motion or on the motion of the defendant, dismiss the action and discharge the defendant . . ."

The general rule in Montana appears to be that a directed verdict of acquittal is appropriate in criminal cases "only where the State fails to prove its case and there is no evidence upon which a jury could base its verdict." State v. Yoss (1965), 146 Mont. 508, 409 P.2d 452, 455. "The

decision whether to dismiss the charge or direct a verdict of acquittal lies within the sound discretion of the trial court and will be disturbed on appeal only when abuse is shown." State v. Just (1979), ____ Mont. ___, 602 P.2d 957, 965, 36 St.Rep. 1649.

Defendant's second contention is that the refusal of the trial court to give the cautionary instruction, "the charge of rape is easily made and difficult to refute," especially where, as here, the proof of lack of consent rests entirely on the uncorroborated testimony of the prosecutrix, is reversible error.

This Court faced a similar situation recently in State v. Just, supra, wherein we stated:

> "Instructions similar to the one above were of-
> fered in the earlier cases of State v. Keeler
> (1916), 52 Mont. 205, 211, 156 P. 1080, 1081,
> and State v. Mihalovich (1924), 69 Mont. 579,
> 585, 22 P. 695, 697. In each of those cases,
> this Court held that the trial judge's refusal
> to give the instruction was proper when there
> was nothing in the record to suggest that the
> prosecutrix was motivated by private malice or
> a desire for revenge . . . The test for deter-
> mining the propriety of giving an instruction
> such as that offered by defendant was set forth
> in the recent case of State v. Ballew (1975),
> 166 Mont. 270, 276, 532 P.2d 407, 411: '. . .
> it is clear that refusals to give such an in-
> struction will be error only when some specific
> cause is shown for distrusting the testimony of
> the complaining witness. Such causes might
> include manifest malice, desire for revenge, or
> an absence of corroborating evidence tending to
> support the facts testified to by the complain-
> ing witness.'" 602 P.2d at 964. (Emphasis
> added.) (Citations omitted.)

As pointed out above, the matter at hand is troublesome. This should alert a trial judge to proceed with extreme caution, because the search for truth is going to be elusive and difficult, and fundamental fairness is not easily ob-tained under these kinds of circumstances. The reasons are clear why all available means be used to impress upon the

jury that uncorroborated testimony of one person to decide a criminal cause is not the usual situation, even though acceptable by the law in this cause, and that they should proceed fairly but with additional caution in this kind of matter.

Here there was undisputed direct evidence that there had been more than casual trouble between these parties in the past when defendant allegedly struck the prosecutrix. The incidents, however, stemming from defendant's relationship with the prosecutrix's sister, were not based on drink or sex, but on defendant's objection to being called a "son-of-a-bitch" by the prosecutrix upon two of the occasions.

Defendant testified that after the sex act was completed on the night of the alleged rape, the prosecutrix suggested a "going out together relationship," after her boyfriend "Ed" returned to college. Defendant states he demurred, and again, without any apparent fear of being beaten, she told him, "get the hell out of my house you son-of-a-bitch."

There is no question that these incidents, true or false, are properly in the record, together with some other impeachment on peripheral matters. Further, there is no question that this evidence entitled defendant to the cautionary instruction. The evidence clearly meets the standard of private malice, desire for revenge and absence of corroboration on the critical matters of consent, all as required by State v. Ballew (1975), 166 Mont. 270, 275-76, 532 P.2d 407, 410-11, and cases cited therein. Failure to give a cautionary instruction in this kind of matter, as previously stated, is more serious than in the ordinary criminal causes and requires reversal.

Therefore, the remainder of defendant's issues for review need not be considered. The judgment of the District Court is reversed, and the cause remanded for a new trial.

_____
                                Justice

We concur:

_____


_____
        Justices

Mr. Chief Justice Frank I. Haswell, deeming himself disqualified, did not participate.

Mr. Justice John Conway Harrison dissenting:

I dissent. In my opinion the majority here improperly substitutes their opinion for that of the jury. Admittedly, the fact situation is unusual but that is what jurors are for and they, not this Court, heard the testimony, saw the witnesses and were in a far better position to weigh the evidence.

As to the giving of the precautionary instruction, I fail to find the trial court in error when it follows the case law established in this State. As recently as last year we upheld the refusal to give such an instruction in State v. Just (1979), ___ Mont. ___, 602 P.2d 957, 36 St.Rep. 1649. See also, State v. Ballew (1975), 166 Mont. 270, 532 P.2d 407. I find no need to search elsewhere for authority to overturn this case when we have, in my opinion, ample authority to sustain the lower court.

_____
Justice