No. 83-155

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

STATE OF MONTANA,

       Plaintiff and Appellant,

-vs-

HOWARD EDWARD GREENWELL,

       Defendant and Respondent.

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert M. Holter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hon. Mike Greely, Attorney General, Helena, Montana
        William A. Douglas, County Attorney, Libby, Montana

    For Respondent:

        Scott B. Spencer, Libby, Montana

Submitted on Briefs: August 4, 1983

Decided: October 6, 1983

Filed: OCT 6 - 1983

_Ethel M. Harrison_
_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal of a conviction of two counts of aggravated assault following a jury trial in the Nineteenth Judicial District, the Honorable Robert H. Holter presiding. The appellant was sentenced to serve a period of ten years in the Montana State Prison on each count, sentences to run concurrently. In addition, each of the sentences were enhanced by a two-year term pursuant to section 46-18-221, MCA, due to the fact that a weapon was involved in the assaults. The appellant was designated a dangerous offender.

The appellant and his family attended a Libby Logger Days carnival in Libby, Montana, on July 18, 1982. Appellant drove to the carnival in a 1973 two-door Pontiac which contained several guns which he was keeping, according to his testimony, because of a recent burglary of his home.

Appellant testified that earlier in the day he had gotten into an altercation with Bob Precht and Randy Martin, a/k/a "Teardrop." At the time of this altercation, the appellant apparently pulled a pocketknife on "Teardrop" and he testified that "Teardrop" tried to pull a knife first. Fortunately, a deputy sheriff was summoned and managed to stop the argument and sent the appellant home.

According to the appellant's testimony, they returned to the carnival about 6:00 p.m. at the request of his

children. He testified that he and his wife stayed outside the carnival grounds while the children went in. At the time the children were returning to the car, the appellant testified he had a confrontation with "Teardrop" and that "Teardrop" stated he was going to get a gun. He testified that "Teardrop" ran off when the children arrived at the car. They then got into the car and started to drive off.

The appellant testified that as he was driving through the gate to the carnival, he saw "Teardrop" with a gun pointed at him, and that his daughter Eva screamed at him, "Daddy, he's got a rifle." In addition, his son Howard, Jr. said, "He's got a rifle. Let's get out of here." He testified that he jumped out of his car, pulled his rifle out and at that time, he could see "Teardrop's" gun pointed at him. He further testified that he consciously pointed the gun only at "Teardrop." Shortly thereafter, a deputy sheriff arrived and took away the appellant's rifle.

The State's witnesses tell a considerably different story. Michelle Taaffe is a thirty-year-old Libby resident and a mother of one child. On the evening of July 18, 1982, she was volunteering her time selling watermelons in a Girl Scout booth at the Libby Logger Days carnival, helping to raise money for a babysitting co-op. Camilla Leckrone, another State witness, is a thirteen-year-old eighth grader who attends Libby Junior High School.

Mrs. Taaffe testified that at approximtely 7:00 p.m. she was getting ready to close down the watermelon stand. The stand was located near the entrance of the fairgrounds. Camilla Leckrone was walking out of the parking lot in the vicinity of the watermelon stand and at that time she

testified she saw a scared, unarmed man running toward her, going toward the entrance to the fairgrounds. She recognized the man as a carnival worker named Randy Martin.

At the same time, a car was coming from the same direction as Martin had been running from, and she testified it pulled directly in front of the watermelon stand. The car stopped and the appellant, Howard Greenwell, pushed a rifle out of the window of the car. She testified that the rifle was pointed at her. Mrs. Taaffe further testified that Randy Martin was running through the entrance of the fairgrounds when the defendant got out of the car with a rifle. Randy Martin had not yet reached a pickup parked in the carnival grounds and she testified that the appellant pointed his gun at her before Randy Martin left her line of sight.

Testimony further indicates as the appellant got out of the car, he raised the rifle to his shoulder, looked Mrs. Taaffe right in the eyes and trained the rifle at her. Mrs. Taaffe testified that the rifle was held on her for several seconds and that it was leveled at her three times. She testified that she was afraid of being shot because it looked to her as though the appellant, who was very close to her, could shoot her and others around her. She was afraid of serious bodily harm. Testimony indicates that she was worried about the children around her and that she felt she should get the youngsters into a vehicle backed up against the watermelon stand and leave the place. She grabbed a friend's little girl and put her in the car and tried to protect a little girl who was standing to her left. This little girl was Camilla Leckrone. According to Mrs. Taaffe,

Camilla was "petrified" and "couldn't move." Camilla "was crying, her face was all red, her hands were down at her sides, and she was just shaking." At that point, Mrs. Taaffe grabbed Camilla, put her in the back of the car and went directly to the police department.

Camilla testified that as she was leaving the fairgrounds she saw a dark blue car approach her. The car stopped, the defendant got out of the car, waved a gun at the people, and pointed the gun directly at her head. She testified that the appellant held the gun into his shoulders, leveled the gun at her, and told her to "get the ____ out of here." She said the defendant's eyes were looking at her while the rifle was leveled at her and that all of this happened at a distance of about twelve feet. In addition to the testimony of these two women, Vicky Ericksmoen, a friend who was with Camilla, testified that the appellant pointed the gun in the direction of Camilla and Mrs. Taaffe. Jean Richmond, another friend who was with Camilla, testified that the appellant pointed the gun at her for three seconds when she startled him.

In addition to the testimony of the women, there was testimony by the law officers who were in the area. Don Bernall, a detective for the Lincoln County sheriff's department testified that he was off-duty and driving past the Logger Day's carnival after picking up his two children. He testified he saw the appellant yelling and waving his rifle in front of the crowd of people. Bernall, fearing for the safety of his two little boys who were in the car with him, pulled his car up the road, turned it off and ran back to the appellant's location. At that point, he observed

another Lincoln County deputy sheriff, Clint Gassett, who had arrived on the scene about the same time and saw him grab the gun (which was pointed up in the air) away from the defendant, disarming him. The weapon was placed in Gassett's car where Bernall examined it and found it to be a British .303 rifle, which was loaded with a round in the chamber, additional rounds in the clip, and the safety was off. At that point, the appellant was placed under arrest and charged with three counts of aggravated assault. At the close of the evidence, the trial court granted the appellant's motion to dismiss count three, the aggravated assault charges involving Randy Martin. The trial judge denied motions to dismiss count one and two, those involving Mrs. Taaffe and Camilla Leckrone because there was sufficient evidence and therefore the matter should go to the jury.

Two issues are presented:

1. Is there sufficient substantial evidence to support the verdict; and

2. Is the evidence consistent with any theory of innocence?

The State notes that the appellant offers two inconsistent propositions for reversal: (1) a total lack of evidence that proves a culpable mental state; and, (2) the circumstantial evidence is as equally consonant with innocence as with guilt, therefore, mandating an acquittal. But since the appellant admitted that a weapon was involved and that both victims were apprehensive of serious bodily injury, the sole issue on appeal is whether the evidence supports the jury's findings that the appellant acted with

-6-

the requisite mental state.

It is the respondent's position that the appellant's intent was proven by the use of circumstantial evidence, and that the evidence relied on by the jury to convict under the facts here is susceptible of only one reasonable interpretation -- that the appellant knowingly or purposely caused a reasonable apprehension of serious bodily harm to the two victims. Finally, the State argues that the evidence is substantial and more than adequate to support the verdict.

The statute delineates the offense: "a person commits the offense of aggravated assault if he purposely or knowingly causes reasonable apprehension of serious bodily injury in another by use of a weapon." Section 45-5-202(1)(c), MCA.

This Court recently, in the case of State v. Starr (Mont. 1983), 664 P.2d 893, 40 St.Rep. 796, considered the statutory words of purposely and knowingly. We noted in that opinion:

> "Occasionally, this Court has referred to 'specific intent' in discussing mental states since the adoption of the 1973 Criminal Code. Parties and attorneys should not be misled. It is well to keep in mind the provisions of the Montana Criminal Code as explained by Essman, A Primer on Mental State in the Montana Criminal Code of 1973, 37 Mont.L.Rev. 401, 403-404, 1976:

> "The Montana Code used only three classifications in evaluating the defendant's mental state: purposely, knowingly, and negligently. These mental state classifications are defined in relation to four objectively measurable conditions or occurrences: conduct, circumstances, facts, and result. However, all four criteria do not apply to each mental state. 'Purposely,' which means with a conscious objective, relates

-7-

to conduct or result. 'Knowingly,'
defined as 'awareness,' relates to
conduct, circumstances, facts or result.
'Negligently,' relates only to
circumstances and result, thus two
functions are performed in analyzing the
statute which describes an offense.
First, determining which mental state
must be proved, and second, determining
to which of the four conditions or
occurrences the mental states relate."
664 P.2d at 897-8.

In this case, whether the appellant had the requisite
"specific intent" as set forth by our stautes to assault the
victims is a question for the jury. The problem of proving
intent was considered by this Court in State v. Gone (1978),
179 Mont. 271 at 278, 587 P.2d 1291 at 1296:

". . . criminal intent, being a state of
mind, is rarely susceptible of direct or
positive proof and therefore must usually
be inferred from the facts testified to
by witnesses and the circumstances as
developed by the evidence. The question
of intent is a question for the jury."
State v. Pascgo (1977), 173 Mont. 121,
566 P.2d 802, 805, citing State v. Cooper
(1971), 158 Mont. 102, 489 P.2d 99.

Here, the State's direct evidence proved that the
appellant acted with a culpable mental state, and it was not
necessary to rely on circumstantial evidence.

It is the appellant's position that a reasonable
interpretation of the evidence given at trial, is that the
appellant did not point the gun at the victims. He
testified that any assault against Mrs. Taaffe and Miss
Leckrone were unintentional and excusable. The other
interpretation of the evidence is that the defense was not
established, the assaults upon the victims were deliberate
and were not excusable. Under this view, the circumstances
of the assault clearly prove that the appellant acted with
the requisite mental state. This interpretation established

the appellant's guilt. The appellant argues that the jury was bound to accept the first view and reject the second, simply because the appellant would be found innocent under the former and guilty under the latter.

We have long held that it is up to the jury to resolve conflicts of evidence. It is also up to the jury to give some testimony more weight than others or to discount some testimony altogether. On appeal, we have held that presumptions change. This Court is not a judge of evidence, the jury is. The evidence is weighed on appeal in a light most favorable to the State, and application of the rule to circumstantial evidence does not change that mandate.

Our standard of review on criminal case on appeal is well established. The evidence is examined to determine if the verdict is supported by substantial evidence. See, State v. Merseal (1975), 167 Mont. 412 at 415, 538 P.2d 1366 at 1368; Pascgo, 173 Mont. at 125, 566 P.2d at 805. In State v. Fitzpatrick (1973), 163 Mont. 220 at 226, 516 P.2d 605 at 609, we noted that this Court will not act as a trier of facts. If there is substantial evidence to support a verdict, it will stand.

A careful and thorough consideration of the record convinces us that there is more than sufficient evidence to support the verdict of the jury and the judgment entered thereon. The judgment of the District Court is affirmed.

_____
Justice

We concur:

-9-

_____
Chief Justice

_____

_____

_____
Justices