No. 83-442

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

ROGER L. ANDERSON,

        Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon R. Bennett, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Jackson Law Firm; Gregory Jackson argued, Helena,
Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
Clay R. Smith argued, Asst. Atty. General, Helena
Mike McGrath argued, County Attorney, Helena, Montana

Submitted: April 20, 1984

Decided: July 16, 1984

Filed: JUL 1 1984

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Defendant Roger Anderson appeals from his conviction in the District Court of the First Judicial District, Lewis and Clark County, on three counts of sexual assault. We affirm.

On March 22, 1983, Roger Anderson was charged by information with three sexual offenses: sexual intercourse without consent, attempted sexual intercourse without consent and sexual assault. The first two charges were subsequently amended to sexual assault. All of the charges involve three minor children: M., the defendant's step-daughter, age ten at the time of trial; R. F., a friend of M., age thirteen at time of trial; and L. M., another friend of M., age nine at the time of trial.

R. F. and L. M. testified during the State's case-in-chief concerning sexual assaults by the defendant. M., who made statements to authorities incriminating the defendant, changed her story prior to trial and testified during the defendant's case-in-chief, denying that sexual assaults had been committed by defendant on her or the other victims. However, the State produced testimony to confirm all of the charges of sexual assault. The jury also heard expert testimony on the subject of sexual offenders and child sex crime.

The jury returned a guilty verdict on all three counts. Defendant subsequently moved for a new trial, but the motion was denied. The court eventually sentenced defendant to three twenty-year concurrent sentences at the Montana State Prison, suspended fifteen years of each

sentence, and designated defendant as nondangerous for purposes of parole eligibility. From his conviction and denial of his motion for a new trial, defendant appeals.

The following issues are presented on appeal:

(1) Whether the District Court erred in tendering a copy of the defendant's trial brief to the State prior to trial and, if so, whether any substantial right of the defendant was prejudiced?

(2) Whether the District Court erred in granting the State's motion in limine to exclude evidence concerning a prior sexual assault allegation by prosecution witness R. F. against an individual other than the defendant?

(3) Whether the District Court abused its discretion by excluding evidence of the State's amendments to the original information, although it took judicial notice of the same?

(4) Whether the District Court erred in permitting testimony by a prosecution witness concerning prior statements by a complaining witness?

(5) Whether the District Court erred in refusing to permit defendant's request to examine a particular witness as a hostile or adverse witness?

(6) Whether the Distict Court erred by admitting rebuttal testimony concerning "prior wrongful acts" by the defendant?

(7) Whether the District Court erred in denying defendant's motion for a new trial on grounds of alleged jury misconduct and insufficient credible evidence to convict the defendant?

(8) Whether the District Court erred in refusing to

give the <u>Smith</u> jury instruction, which provides that allegations of sexual crimes are "easily made but difficult to refute?"

<u>WHETHER THE DISTRICT COURT ERRED IN TENDERING A COPY OF THE DEFENDANT'S TRIAL BRIEF TO THE STATE PRIOR TO TRIAL AND, IF SO, WHETHER ANY SUBSTANTIAL RIGHT OF THE DEFENDANT WAS PREJUDICED?</u>

Defendant's trial brief, presented to the judge a few days before trial, outlines four arguments or theories to be advanced by defense counsel: (1) the introduction of testimony to establish defendant's "good character;" (2) evidence of wrongful motives on the part of R. F. to testify against the defendant, to wit: that she was attempting to "get back" at defendant, a police officer, for apprehending her for criminal activity on at least two occasions, and reporting another incident of her wrongful conduct to sheriffs' deputies; (3) introduction of evidence of the State's amendments to the original information to show the "instability" of prosecution witness testimony; and (4) introduction of evidence of a previous sexual crime charge made by R. F. against another man, a charge subsequently dismissed, to again establish wrongful motives by R. F. in complaining against defendant.

Upon receipt of the brief, the trial judge tendered a copy to the county attorney. Defense counsel learned that a copy had been delivered when the county attorney called him to obtain further information about statements made in the brief. Prior to the start of trial, defendant moved to dismiss the charges, arguing that release of the brief had

-4-

unfairly permitted the State to rehabilitate its witnesses and revise its voir dire, cross-examination and rebuttal strategies. The court responded that defendant was never ordered to produce the trial brief, and that it had tendered a copy of the brief only to expedite the trial. The motion to dismiss charges was denied.

On appeal, defendant renews his initial arguments supporting dismissal of the charges, arguing that release of a copy of the brief to opposing counsel was in violation of the constitutional guarantee against self-incrimination and local court rules and customs pertaining to trial briefs.

The protections of the Fifth Amendment to the United States Constitution, made available to criminal defendants in state proceedings through the due process component of the Fourteenth Amendment, pertain only to compelled self-incrimination. Lefkowitz v. Cunningham (1977), 431 U.S. 801, 804-5, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1, 6; Malloy v. Hogan (1964), 378 U.S. 1, 8, 84 S.Ct. 1489, 1493-94, 12 L.Ed.2d 653, 659-60. Assuming, for the purpose of argument, that the contents of defendant's brief even raised the prospect of self-incrimination, defendant was under no compulsion to produce the information or arguments summarized in the trial brief.

Furthermore, nothing in the First Judicial District Court rule or custom on trial briefs affords defendant the kind of confidentiality sought after respecting the contents of his brief. The rule or custom requires only that a brief set forth counsel's theory of the case and the issues involved plus supporting authorities. Neither party need disclose in detail the nature of evidence to be offered. A

brief need not be served on opposing counsel, but rule or custom does not prevent the District Court, in the exercise of its discretion, from forwarding a copy of the the trial brief of one party to another after the brief is filed with the court.

Whether there exists any set of circumstances under which tender of a trial brief to an opposing party would be impermissible, other than the threat of compelled self-incrimination, is irrelevant here. The subject matter of defendant's trial brief was to be freely offered and elaborated upon at trial. Thus, defendant effectively waived any privileges which may have been involved with respect to the contents of the brief. Cf. State v. Hardy (1977), 293 N.C. 105, 235 N.E.2d 821, 841, (work product privilege waived when defendant or state seeks at trial to make testimonial use of the work product). Moreover, defendant suffered no substantial prejudice from disclosure of the brief. Prosecuting attorneys presumably would have moved in limine to exclude evidence of the amendments to the information and R. F.'s allegation of previous sexual assault even if they had not received the brief in advance of trial. The disclosure that defendant intended to adduce testimony about his "good character" and R. F.'s allegedly wrongful motives is likely innocuous, as there is no reasonable possibility that the trial court's tender of a copy of the brief might have contributed to the conviction. The most that can be said of the court's action is that it fairly facilitated the trial process by avoiding disruption of testimonial flow.

WHETHER THE DISTRICT COURT ERRED IN GRANTING THE STATE'S MOTION IN LIMINE TO EXCLUDE EVIDENCE CONCERNING A PRIOR SEXUAL ASSAULT ALLEGATION BY PROSECUTION WITNESS R. F. AGAINST AN INDIVIDUAL OTHER THAN THE DEFENDANT?

Defendant wished to produce evidence of a previously dismissed sexual assault charge involving R. F. as the complaining witness to demonstrate that she had a vengeful motive in bringing a similar charge against defendant. Prior to trial, the State moved to exclude this evidence and the court conducted a hearing to consider the State's motion.

The previous case, State v. Everitt Bratcher, concerned a charge that Bratcher had sexually assaulted R. F. on several occasions over the four-year period prior to 1980. The case was dismissed on motion of the prosecuting attorney in January, 1980. According to defendant Anderson's counsel, the charge against Bratcher was untrue, and counsel offered to produce Bratcher's attorney as a witness to support the claim that the charge was false. Bratcher's attorney would not only testify that his client had adamently denied the charge, but that it was his belief that the charge was motivated only by R. F.'s desire to obtain revenge for having been denied access to a play area by Bratcher. Defendant Anderson's counsel argued that independent medical testimony to be heard in the immediate case would at least confirm that R. F. had never experienced sexual intercourse. In summary, counsel maintained that cross-examination of R. F. on the history of the prior charge was justified as a test of R. F.'s credibility, and that there would be no attempt made to probe into R. F.'s

general moral character.

The State sought to exclude introduction of this evidence on the grounds that the previous charge had been dismissed because R. F.'s mother did not want her daughter to experience the rigors of trial, not because the allegations against Bratcher were false. The prosecuting attorney responsible for the Bratcher case testified under oath that the only basis for dismissing the charges was because of R. F.'s mother's "vehement request," and that there was no doubt in his mind regarding the truthfulness of R. F.'s allegations against Bratcher. One of the prosecuting attorneys in the instant case informed the court that the social worker involved with R. F. in the Bratcher case had urged the family to drop the charges, because R.F. had essentially forgotten the alleged assaults, and because the experience of trial could have been bad for her. As to the matter of whether R.F. had suffered penetration, the State indicated that Bratcher had been charged with sexual assault, regardless of statements made by R. F. that could be construed as evidence that she may have experienced intercourse.

The trial judge granted the State's motion in limine, concluding that the defendant's "evidence" was more unfairly prejudicial than probative. The judge's explanation for that ruling is instructive:

> "Here we have [defendant's proposed] evidence that clearly will smear the witness of the State of being nothing less than a sexual libertarian, always getting in trouble, committing other offenses, being seduced from time to time, and so on. It's presented, as noted by the defendant, to challenge the witness' credibility, but, in fact, it puts the complaining witness . . . on

trial for sexual deviation. When you balance that against what can be proven by the fact that she brought a charge and then dropped it, is placing a burden on the State that the State should not have to bear, and I think it defeats the basic end that we're trying to reach here, and that is discover the truth about this particular complaint . . . [T]he fact that under the circumstances described by [the prosecutor in the Bratcher case], that this case was dropped is not even very good evidence against her credibility, but it's overwhelming evidence against her character and would tend to make this a trial of the complaining witness." Tr. at 25-26 (emphasis added).

On appeal, defendant argues that the evidence should have been admitted. Defendant recognizes that the only Montana case on the subject, State v. McSloy (1953), 127 Mont. 265, 261 P.2d 663, holds that evidence of similar sexual offenses claimed to have been committed is inadmissible. Nevertheless, he contends that McSloy is bad law, out-of-step with the Montana Rules of Evidence, and contrary to a line of cases begining with People v. Hurlburt (1959), 166 Cal.App.2d 334, 333 P.2d 82, holding that such evidence is admissible.

Rule 608(b), Mont.R.Evid., prohibits use of extrinsic evidence of specific instances of a witness' conduct to attack his or her credibility, except that the same instances may be inquired into on cross-examination of the witness, in the discretion of the court, if the evidence is probative of the witness' penchant for truthfulness or untruthfulness. See Rule 608(b)(1). The McSloy rule admittedly cuts off even the limited inquiry contemplated by the above-cited exception to Rule 608(b). Hurlburt, however, is more in line with the current rules of evidence. As the California court emphasized, evidence of prior false

-9-

accusations of the same sexual crime involved in a more current case, while not admissible for the purpose of impeaching the general character or reputation of the witness, may be admissible if probative of the witness' state of mind, motive, or biases with respect to making the more current accusations. Hurlburt, 166 Cal.App.2d 334, 333 P.2d at 87. The principle expressed in Hurlburt-that evidence of prior false charges may often be probative of the complaining witness' specific reputation for untruthfulness-is approved by most jurisdictions. See e.g., People v. Simbolo (1975), 188 Colo. 49, 532 P.2d 962; People v. McClure (1976), 42 Ill.App.3d 952, 356 N.E.2d 899; Little v. State (Ind.App. 1980), 413 N.E.2d 639; Woods v. State (Okla. Crim. App. 1983), 657 P.2d 180; State v. Nab (1966), 245 Or. 454, 421 P.2d 388; State v. Izzi (1975), 115 R.I. 487, 348 A.2d 371.

In cases involving sexual intercourse without consent, the legislature has determined that evidence of a victim's sexual conduct is inadmissible in all but very limited circumstances. See Section 45-5-503(5), MCA. This statutory prohibition reflects a compelling interest in favor of "preserv[ing] the integrity of the trial and . . . prevent[ing] it from becoming a trial of the victim." State v. Higley (Mont. 1980), 621 P.2d 1043, 1050-51, 37 St.Rep. 1942, 1948. Although there are no specific statutory limitations on the use of evidence of a victim's sexual conduct in sexual assault cases, McSloy, Rule 608(b), and evidentiary rules governing relevance, Rule 401, Mont.R.Evid. and prejudice and confusion of issues, Rule 403, Mont.R.Evid., generally act as a barrier against

introduction of such evidence. Despite the general policy against sordid probes into a victim's past sexual conduct, we conclude that the policy is not violated or circumvented if the offered evidence can be narrowed to the issue of the complaining witness' veracity. Hall v. State (1978), 176 Ind.App. 59, 374 N.E.2d 62. Indeed, limiting or barring a defendant's cross-examination of a complaining witness in a sex crime case where there is evidence of prior false accusations restricts defendant's enjoyment of the worth of his constitutional right to confront witnesses. See Hughes v. Raines (9th Cir. 1981), 641 F.2d 790, 792 (habeas corpus action challenging restrictions on defendant's cross-examination of complaining witness in attempted rape prosecution).

Our inquiry in the immediate case is directed to whether the trial court properly restricted mention of the offered evidence of the prior sexual assault charges. We emphasize that Hurlburt and related cases hold only that evidence of similar sexual offenses claimed to have been committed against the victim by other individuals is admissible if the offenses were proven or admitted to be false. Hurlburt, supra, 166 Cal.App.2d 334, 333 P.2d at 87; People v. Johnson (Cal. Ct. App. 1967), 64 Cal. Rptr. 875, 881, vacated on other grounds (1968), 68 Cal.2d 646, 441 P.2d 111, 68 Cal.Rptr. 599, cert. den. (1969), 393 U.S. 1051, 89 S.Ct. 679, 21 L.Ed.2d 693; Little, supra (prior allegations must be "demonstrably false"); Nab, supra. If the charges are true or reasonably true, then evidence of the charges is inadmissible, mainly because of its prejudicial effect, see Little, supra, but certainly because

-11-

of its irrelevance to the instant proceeding. Little, supra; Nab, supra. Furthermore, evidence of prior charges which have not been adjudicated to be true or false; i.e., which may be true or false is also inadmissible, primarily because its introduction circumvents the interest in preserving the integrity of the trial and preventing it from becoming a trial of the victim. See Little, supra (reception of evidence which may be true or false allows circumvention of laws designed to protect legitimate interests of victim). These limitations do not infringe upon a defendant's right to confrontation. See Hughes, supra, 641 F.2d at 792-93.

In order to establish whether there is sufficient support for the contention that the prior allegations are false, a separate hearing outside the jury's presence should be held. People v. Sheperd (Colo. App. 1976), 551 P.2d 210, 212. See also Woods, supra, 657 P.2d at 182. Such a hearing was held in this case, and we conclude that, in reviewing the arguments and offers of proof presented, the court's decision to grant the state's motion in limine was justified.

There was no competent evidence that the charges brought against Bratcher on the basis of R. F.'s complaint were false. That the charges were dismissed does not by itself establish their falsity, especially in view of the prosecuting attorney's testimony that the charges were dismissed only because R. F.'s mother did not want her daughter to experience the trial, and because of the offer of proof concerning the social worker's belief that the charges were true, based on her discussions with R. F.

-12-

Evidence of prior charges has been barred in those instances where the charges have been dropped due to an inability to locate the victim, State v. Demos (1980), 94 Wash.2d 733, 619 P.2d 968, or due to a belief that there was insufficient evidence to prosecute, Johnson, supra, because the evidence is not probative of truth or falsity. The same is true of the instant case. The charges were never tested for truth or falsity and were still disputed at the time of trial.

Defense counsel's offers of proof are also irrelevant. The fact that Bratcher's attorney would testify that Bratcher had denied the charges is inadmissible, whether on grounds that a mere denial does not establish falsity, Johnson, supra, or because the attorney's testimony would have been inadmissible hearsay. See Rules 801(c) and 802 Mont.R.Evid. and People v. Mandel (1978), 61 A.D.2d 563, 403 N.Y.S.2d 63, 68, rev'd on other grounds (1979), 48 N.Y.2d 952, 401 N.E.2d 185, 425 N.Y.S.2d 63, cert. den. (1980), 446 U.S. 949, 100 S.Ct. 2913, 64 L.Ed.2d 805. Similarly, the existence of medical testimony in the instant case that R.F. had never experienced intercourse does not prove the falsity of the prior charges. Bratcher had been charged with sexual assault, not sexual intercourse without consent, and R. F.'s equivocal statements about what she had experienced are not probative of the truth or falsity of the charge against Bratcher.

In short, the offered evidence would not have been probative of R. F.'s inclination for truthfulness or untruthfulness, as maintained by defendant, but certainly would have placed a prejudicial stamp on her general character and reputation. The trial court concluded

correctly that this irrelevant, prejudicial evidence would have shifted the focus of trial away from its central purpose and thus had to be barred. Neverthless, the court later permitted a reference that R. F. had been a victim of another sexual assault. This evidence, which came about through the testimony of social worker Mary Peterson, was permitted for the limited purpose of showing to the jury that R. F. could have had a basis for fantasizing the incidents involving defendant Anderson. That ruling followed testimony by Dr. Elizabeth Gunderson, a petiatrician and defense witness, who testified previously that a child like R. F., having experienced other sexual assaults, could have a basis for fantasizing future sexual assaults. Also, during closing arguments, defense counsel reminded the jury about R. F.'s previous assault and implied that she had fantasized the subsequent assault. Thus, defendant did have the opportunity to challenge R. F.'s veracity within the confines of the court's concern that the trial of defendant not become a trial of the complaining witness. This limited inquiry was proper in light of Gunderson's testimony.

In summary, we modify our holding in McSloy to conform to the principles expressed in Hurlburt and implicit in Rule 608(b). Applying this modified standard to the facts of the immediate case, we conclude that the trial court did not commit error in its rulings on the admissibility of evidence concerning the Bratcher incident.


WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION BY

EXCLUDING EVIDENCE OF THE STATE'S AMENDMENTS TO THE ORIGINAL

INFORMATION, ALTHOUGH IT TOOK JUDICIAL NOTICE OF THE SAME?

The State amended its original information twice, both times reducing charges of sexual intercourse or attempted sexual intercourse to sexual assault. Defendant contended that the amendments reflected changing stories by the victims, and sought to admit evidence of the amendments for the purpose of attacking the credibility of State witnesses. The county attorney moved in limine to exclude the evidence of the amendments, and supported his motion with the following argument.

> "[A]s a basic trial tactic I made a decision to amend the charges in this case on two separate occasions. I will admit that we made a mistake in our office in reading the police reports initially regarding the question of sexual intercourse. I think we could have proven sexual intercourse without consent from statements made regarding oral sex. I made a determination that I did not want to do that. I don't want to make an argument to the jury that oral sex can amount to rape. There was also some misunderstanding as . . . to whether or not there was sexual intercourse or not as has been alluded to earlier; therefore, I made a decision. The victims did not make a decision. I made a decision to amend the charges to reduce to sexual assault as a trial tactic. Again, [defense] counsel will have the opportunity to cross-examine all of our witnesses on any prior inconsistent statements they may or may not have made. He will have an opportunity to cross-examine the officer that investigated this case regarding statements made in his report regarding whether there was sexual intercourse or not; therefore, counsel will have more than ample opportunity to deal with the issues involved, and I would ask that the jury not be informed to the fact that for trial tactic reasons this case has been amended." Tr. at 27-28 (emphasis added).

After hearing arguments by defense counsel, the court

granted the state's motion, although it indicated that it would take judicial notice of the amendments.

Defendant reasons that, once the amendments were judicially noticed, any evidence behind their having been made should have been placed before the jury for consideration. As a general proposition, defendant's argument is meritless. The trial court took notice of the amendments only for the purpose of ruling on the motion in limine, not for future evidentiary considerations. Judicial notice is always confined to those matters which are relevant to the issues at hand. See, e.g., Gbur v. Cohen (1979), 93 Cal.App.3rd 296, 301, 155 Cal.Rptr. 507, 510. The trial court made it clear that judicial notice of the amendments was not intended to place evidence of their existence before the jury. The court's ruling was ultimately predicated on its belief that, under Rule 401, Mont.R.Evid., evidence of the amendments was not probative of the veracity of prosecution witnesses. It must be emphasized that defense counsel was given the opportunity to cross-examine the complaining witnesses during trial concerning their veracity. And, during closing arguments, defense counsel pointed out what he maintained were inconsistencies in witness testimony. We find no error in the trial court's decision to grant the motion in limine concerning the amendments to the original information.

WHETHER THE DISTRICT COURT ERRED BY PERMITTING TESTIMONY BY A PROSECUTION WITNESS CONCERNING PRIOR STATEMENTS BY A COMPLAINING WITNESS?

At issue is the testimony of prosecution witness Mary

Peterson, a social worker. During the direct examination of Peterson, defense counsel objected to a line of inquiry about statements R. F. had made to Peterson about the nature of the sexual assaults. The inquiry was in connection to remarks made by R. F., whose testimony on cross-examination was allegedly unclear about the occurance of sexual assaults. Defense counsel objected to any remarks by Peterson as inadmissible hearsay. The State argued that Peterson's testimony would be admissible under Rule 801(d)(1), Mont.R.Evid., which essentially removes from the concept of hearsay prior consistent or inconsistent statements. Over continuing objection, the trial court specifically permitted Peterson to testify under Rule 801(d)(1)(B) as to prior consistent statements, because the examination of R. F. had "at least raised the specter of impeachment sufficiently to permit this sort of confirmation by another witness."

Defendant's argument is that Peterson's remarks about R. F.'s previous statements contradicted R. F.'s trial testimony, thus making the remarks prior inconsistent, as opposed to prior consistent, statements. As such, defendant maintains that the statements should have been excluded. Defendant's position is based on the assertion that Peterson's recitation of R. F.'s experiences differed markedly from the descriptions offered by R. F. herself. By admitting the much more graphic statements of Peterson, defendant concludes that he was unduly prejudiced in the minds of jurors.

Whether there exists any significant difference between the substance of Peterson's testimony about R. F.'s

initial statements to her and R. F.'s later testimony is immaterial with respect to the issue of admissibility. Regardless of the trial court's references to subsection (d)(1)(B) of Rule 801, prior _inconsistent_ statements are admissible under Rule 801(d)(1)(A) whether or not the declarant has been impeached by either side in the case. See, e.g., State v. Fitzpatrick (1980), 186 Mont. 187, 195-96, 606 P.2d 1343, 1348. Although defense counsel did make a continuing general objection to Peterson's testimony prior to her recitation of R. F.'s earlier statements, the law generally requires more specific objections to be made to portions of the testimony deemed inappropriate; broad, general objections do not suffice. See, e.g., State v. Britt (1977), 291 N.C. 528, 231 S.E.2d 644, 650. Defense counsel made no specific objections to any portion of Peterson's testimony regarding the use of prior inconsistent, as opposed to prior consistent, statements.

Furthermore, after carefully comparing the statements made by R. F. and Peterson, we conclude that any technical inconsistencies are minimal and irrelevant. The statements are practically consistent with each other. All three incidents described depict sexual misconduct involving the same people in the same places. The only likely inconsistency, which involves the differing descriptions of the first incident of assault, is not crucial to the conviction. Whether R. F. merely danced nude on defendant's bed while he lay naked under the covers or whether he actually masturbated on her body was non-prejudicial, because the inconsistency could only serve to impeach either R. F. or Peterson. The other sexual assaults involving R.F.

-18-

were established, so the legal effect of excluding evidence of the first incident would not warrant reversal of defendant's convictions on the other incidents.

## WHETHER THE DISTRICT COURT ERRED IN REFUSING TO PERMIT DEFENDANT'S REQUEST TO EXAMINE A PARTICULAR WITNESS AS A HOSTILE OR ADVERSE WITNESS?

M., defendant's stepdaughter, was one of the victims, but was not called as a prosecution witness, even though she had been listed as one in the final information. The defense called her as a witness in its case-in-chief, and requested that she be examined as a hostile witness under Rule 611(c), Mont.R.Evid., solely on grounds that she had been listed as a prosecution witness. The State objected, and the motion was denied until such time as M.'s testimony during cross-examination actually reflected hostility toward defendant. M. proceeded to testify, denying any sexual improprieties involving her and her friends with defendant and denying statements made to social worker Mary Peterson about these improprieties.

The question of whether a witness is adverse under Rule 611(c) is addressed to the sound discretion of the trial court. Jojola v. Baldridge Lumber Co. (Ct.App. 1981), 96 N.M. 761, 635 P.2d 316, 318 (interpreting Rule 611(c), N.M.R.Evid., which is identical to the Montana rule). This is consistent with pre-Rules of Evidence case law in Montana. See, e.g., State v. Collette (1946), 118 Mont. 473, 477, 167 P.2d 584, 586. Here, the trial court was not unwilling to let defense counsel proceed under Rule 611 once actual hostility was established. In light of M.'s

-19-

testimony absolving defendant, the "on-paper" significance of M. initially being identified as a prosecution witness is irrelevant.

## WHETHER THE DISTRICT COURT ERRED IN THE ADMISSION OF REBUTTAL TESTIMONY CONCERNING "PRIOR WRONGFUL ACTS" BY THE DEFENDANT?

At issue is the testimony of D. H., a young girl who supposedly had slept in defendant's bed while defendant was both present and naked. The event allegedly took place some time before the incidents involved in the instant case, while D. H. was visiting M. The State had given notice under State v. Just (1979), 184 Mont. 262, 602 P.2d 957, that it intended to introduce such evidence to show "opportunity, intent, plan, knowledge, [and/or] absence of mistake or accident." However, the State did not produce D. H. as a witness during the case-in-chief. Instead, she was produced as a rebuttal witness, and was permitted by the court to testify over objection as to the incident in defendant's bed.

Defendant renews two arguments advanced during trial: first, that the admission of the rebuttal testimony is controlled by the substantive requirements outlined in Just for admissibility of "other crimes" evidence; and second, that the testimony does not meet any of the requirements.

Rule 404(a)(1), Mont.R.Evid., permits the accused to offer evidence of his good character to support an inference that he did not commit the crime, and allows the prosecution to rebut the same with contrary evidence. In the instant case, the defendant testified on his own behalf, claiming

-20-

that he had never engaged in improper sexual activity with his stepdaughter, the other victims, or anyone else. Defendant's wife also testified on his behalf, describing his sexual mores as orthodox, and that the charges against him did not comport with her knowledge of him. Defendant's step-daughter denied the existence of the assaults and the alleged incident with D. H. Other witnesses also testified as to defendant's good character. The major aim of defendant's case, as revealed by the testimony of defendant and his witnesses, was the establishment of defendant's reputation for morality and personal truthfulness--conduct and beliefs inconsistent with the charges filed against him. Under the circumstances, the State was entitled to rebut what it believed were false claims. The only rebuttal witness to testify about these matters was D. H. The fact that the prosecuting attorneys reserved her testimony until rebuttal, rather than present it during the State's case-in-chief, is of no legal consequence. The Just substantive requirements for admissibility of "other crimes or acts" evidence do not apply to rebuttal evidence offered under Rule 404(a)(1). We therefore need not determine whether the essence of D. H.'s testimony meets these requirements.

WHETHER THE DISTRICT COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A NEW TRIAL ON GROUNDS OF ALLEGED JUROR MISCONDUCT AND INSUFFICIENT CREDIBLE EVIDENCE TO CONVICT THE DEFENDANT?

1. Jury Misconduct

After trial, defense counsel procured an affidavit

from one of the jurors, Lucy Lamping, stating that she believed the defendant was innocent, and that the guilty verdicts were the result of pressure brought to bear on her and other jurors because of the late morning-early hour deliberations and a belief by some jurors that if a new trial was ordered (presumably because of a hung jury), defendant would eventually be convicted anyway. Defendant reasons that Rule 606(b), Mont.R.Evid. permits introduction of the Lamping affidavit because the assumption that defendant would receive a new trial was the kind of improper outside information frowned upon under the Rule, and because the pressures of late night-early morning deliberations were clearly prejudicial.

Defendant freely concedes that Rule 606 generally prohibits inquiry into the validity of jury verdicts through admission of juror affidavits or testimony concerning "any matter or statement occurring during the course of the jury's deliberations or . . . the effect of any thing upon his or any other juror's mind or emotions as influencing him to assent or dissent from the verdict or indictment or concerning his mental processes in connection therewith." We find that neither allegation contained in the Lamping affidavit may serve as a basis for inquiry into the jury's verdicts under any of the exceptions to Rule 606(b).

Recently, in State v. Maxwell (Mont. 1982), 647 P.2d 348, 39 St.Rep. 1149, this Court emphasized that Rule 606(b) is designed to insure the right to have a jury deliberation in camera, free from 'frivolous and recurrent invasions of that privacy by disappointed litigants . . .' [and that] [t]he exceptions stated in [Rule 606] . . . are exclusive

-22-

and are narrowly construed." 649 P.2d at 353, 39 St.Rep. at 1154 (emphasis added). Here, there are no allegations that the alleged argument during jury deliberations about a "new trial" and expedient verdicts were the result of outside influence or pressure brought on the jury, such that Subsection (b)(2) of Rule 606 would come into play and permit introduction and consideration of the affidavit. Moreover, the effect of lengthy deliberations on a juror's physical, mental, or emotional condition and the subsequent effect these conditions may have on the individual juror's vote are, for the purpose of challenging the verdict, within the general prohibition of Rule 606(b). See Maxwell, supra, 647 P.2d at 353, 39 St.Rep. at 1154, citing Mueller, Juror's Impeachment of Verdicts and Indictments in Federal Court Under Rule 606(b), 57 Neb.L.Rev. 920 (1978).

Given that the allegations contained in the Lamping affidavit really go to internal deliberations involving no outside pressure, Montana law does not support defendant's motion for a new trial on grounds of jury misconduct. The trial judge did not err in refusing to accept and consider the affidavit. Indeed, the trial judge was quite considerate of the jury's well-being as well as the defendant's interests. According to the Minute Entries of the District Court's file on the case, at 2:25 a.m. on June 17, 1983, the jury foreman advised the District Judge and the parties of the jury's desire to continue deliberations. No objections to continuation were voiced by any of the jurors at that time. Later, upon delivery of the verdict, the jury foreman indicated to the trial judge that there were no dissenters to the verdicts.

-23-

## 2. Sufficiency of the Evidence

Defendant's argument here is that the existence of inconsistencies in the testimony of complaining witnesses makes the evidence supporting conviction both insufficient and incredible. Without question, great weight had to have been placed on credibility of the witnesses. Nevertheless, upon examining the record, including the testimony of complaining witnesses, we find that the jury's determination that defendant was guilty as charged is supportable.

The standard of review is whether the jury's verdict is supported by substantial evidence. State v. Greenwell (Mont. 1983), 670 P.2d 79, 82, 40 St.Rep. 1616, 1621. With respect to the crucial matter of witness credibility,

> "[t]he jury is the sole judge . . . [I]nconsistencies [in witness testimony] do not make [the] testimony inherently incredible. 'Only in those rare cases where the story told is so inherently improbable or so nullified by internal self-contradictions that no fair-minded person could believe it may we say that no firm foundation exists for the verdict based on it.'" Maxwell, supra, 647 P.2d at 351, 39 St.Rep. at 1152 (citations omitted).

A review of R. F.'s testimony does reveal some difficulty in describing the nature of the assaults. Nevertheless, this testimony does describe in fairly certain terms two incidents of sexual assault, and a review of the entire record indicates that these descriptions held up under cross-examination. Defendant does not quote from L.M.'s testimony, but maintains that it came about through "heavily leading questions." Defense counsel maintains that he objected to this line of testimony, but there is no indication in the record that he did so. Moreover, the testimony contains evidence that a sexual assault took

place. Finally, although M.'s testimony tends to vindicate defendant, the testimony from Mary Peterson about M.'s prior statements to her tends to establish that assaults were committed.

Although defendant does not go beyond the testimony of the three girls, the jury did hear important testimony from other witnesses, and was entitled to consider and weigh this testimony in conjunction with that of the complaining witnesses:

(1) Dr. Elizabeth Gunderson, a defense witness, informed the jury that, in her opinion, even though there was no evidence of penetration of R. F., she believed that the child had experienced sexual molestation. The descriptions made by R. F. to Gunderson of the events surrounding the molestation closely match the descriptions given by R. F. during her testimony.

(2) Detectives Sam McCormack and Richard Hammerbacker testified to remarks made by defendant during their only interrogation of him. (Defendant was properly informed of his Miranda rights and voluntarily signed a waiver.) The remarks could have been construed as confessions by the defendant:

> "Q. [By Ms. Clemens] After he denied having sexual intercourse, did you ask any further questions?
>
> "A. [McCormack] He said that all he did was played around with them with the use of some vaseline, and I again asked him if he attempted to have sexual intercourse with them, and he said, 'Well, yes, but --' and at that time stopped talking and asked for an attorney.
>
> " . . .

"Q. [By Mr. McGrath] Could you tell the jury in your own words what happened [when you interrogated the defendant?]

" . . .

"A. [Hammerbacker] At this time Detective McCormack, who is my partner, advised Roger Anderson of his rights per the Miranda decision and had him sign a waiver of these rights. He, Detective McCormack then asked Roger Anderson if he had ever had sexual intercourse with any of the young girls, and I was standing behind Roger Anderson, and I heard him answer Detective McCormack, he said, 'No. I did fool around,' or 'We did fool around with some vaseline.'

"And then Detective McCormack asked him if he had ever attempted sexual intercourse, and Roger Anderson answered, 'Yes, but --' I recall that 'but,' and then he said, 'I'll get an attorney and get back to you.'" (Tr. 253)

Neither statement was objected to by defense counsel, although counsel did attempt to adduce testimony from the officers in an attempt to challenge their interpretation of defendant's remarks;

(3) Alice Morse, a social worker who works with sexually abused children, testified about the possibility that molested children may often deny that they have been victimized by their parents, for fear of losing the security of home life and love of the accused parent. Thus, the jury could have believed that defendant's stepdaughter had changed her story only out of love and respect for the defendant.

(4) Penny Say, the restitution officer involved in R. F.'s previous problem with juvenile authorities, indicated that she likely had no motive to punish defendant for his role in bringing her to Say and other authorities for her previous offenses.

-26-

In conclusion, the evidence, when considered in its entirety, is both sufficient in quantity and quality to sustain the jury's verdicts.

## WHETHER THE DISTRICT COURT ERRED IN REFUSING TO GIVE THE SMITH JURY INSTRUCTION, WHICH PROVIDES THAT ALLEGATIONS OF SEXUAL CRIMES ARE "EASILY MADE BUT DIFFICULT TO REFUTE?"

Defendant wanted the jury to be instructed that "the charge of sexual assault is easily made and difficult to refute." This is a variant of the cautionary instruction determined by this Court in State v. Smith (1980), 609 P.2d 696, 37 St.Rep. 583, to be mandatory when victim animus toward defendant is shown and where there is an absence of critical testimony corroborating the charges. The trial court refused to give the instruction.

We note initially that Smith has recently been overruled on grounds that cautionary instructions like the one requested in the immediate case are an improper comment on the evidence and are not required by law or public policy. See State v. Liddell, No. 83-276. Nevertheless, even if we assume that Smith-type instructions were lawful at the time of trial, the court did not err by refusing to give one in the instant case.

Our past decisions emphasize that Smith-type instructions were proper only in exceptional circumstances. Victim animus, for example, had to be demonstrated by proof of malice or vengeance on the part of the victim. See Smith, supra. See also State v. Mackie (Mont. 1981), 622 P.2d 673, 676, 38 St.Rep. 86, 91, an opinion authored by the trial judge presiding in the immediate case. M.'s testimony

tended to vindicate defendant. R. F.'s and L. M.'s testimony was obviously damaging, but the trial court found no evidence in their statements of "manifest malice or motive for revenge," Mackie, supra, 622 P.2d at 676, 38 St.Rep. at 91. Moreover, any retaliatory motive on R. F's part appears to be a "strawman," primarily because the criminal investigation leading up to the charges began through L. M.'s mother's independent questioning of her daugher.

Insofar as the presence of corroborative evidence is concerned, the jury heard the testimony of the detectives regarding defendant's "confession." His references to the use of vaseline, for example, are corrobarative of at least one aspect of the victims' testimony regarding the nature of the sexual assaults. In any event, the giving of the Smith instruction required proof of both victim animus and lack of corroborative testimony. Under the circumstances, the trial court acted properly in denying the instruction.

The conviction is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____
Justices

-28-

Mr. Justice Frank B. Morrison, Jr. dissents as follows:

There are several close evidentiary questions in this case. The trial court gave careful attention to the arguments of counsel and where at all possible I believe this Court should defer to the discretion of the trial court when discretion can be legitimately engaged.

I must dissent with respect to one evidentiary ruling which was clearly erroneous. R.F.'s charge against Bratcher was dismissed and I do agree with the majority opinion that such dismissal, standing by itself, does not show the charges were demonstrably false. I also agree that the charges may have been dismissed at the insistence of complainant's mother because the mother did not want R.F. to experience the trauma of trial. Again, this does not show the charges were false.

The majority opinion then goes on to gloss over the critical issue with respect to the admissibility of R.F.'s charges against Bratcher. The majority states:

> "Similarly, the existence of medical testimony in the instant case that R.F. had never experienced intercourse does not prove the falsity of the prior charges. Bratcher had been charged with sexual assault, not sexual intercourse without consent, and R.F.'s equivocal statements about what she had experienced are not probative of the truth or falsity of the charge against Bratcher."

This statement may seem innocuous when read casually. However, the statement is misleading because R.F.'s charges against Bratcher were not equivocal statements. Additionally, the majority opinion fails to specifically address the real issue because defendant's position cannot be persuasively answered.

The facts here are simple. R.F., the complainant against Roger Anderson, had previously charged one Bratcher with sexual assault. Her complaint against Bratcher stated that Bratcher had engaged her in numerous acts of sexual

29

intercourse. The medical testimony established that R.F. had never had sexual intercourse. Defendant sought to introduce the false charges R.F. made against Bratcher to demonstrate that R.F. was lacking in credibility. The evidence would have prejudiced R.F. but was so probative on the issue of R.F.'s credibility that the trial court clearly committed error in denying admission of the evidence.

The majority, without ever telling us what charges R.F. made against Bratcher, simply passes them off as "equivocal statements." In all fairness I must set forth at least one of these "equivocal statements" as illustrative to show that R.F.'s previous charges against Bratcher were demonstrably false and were admissible in the trial of Roger Anderson. In chambers, during argument on the admissibility of this evidence, defense counsel presented to the trial court the following excerpt from R.F.'s statement against Bratcher. She was being interrogated by law enforcement. She was asked:

> "Let's go back to this apartment by your grandmother's now. When he asked you to go into the apartment, exactly what happened the last time?"

R.F. responded:

> "We got on and he stuck his thing in me."

The medical evidence clearly showed R.F. was previously chaste. Her charge against Bratcher was demonstrably false. The evidence should have been admitted to impeach her credibility.

I do not feel that any one justice always knows the right answer. In fact, most of the questions presented to this Court are close questions which do not compel a certain resolution. Although a dissenting justice may feel strongly the majority has gone astray, judicial lectures not necessary to issue resolution are inappropriate and should be avoided.

30

Having filed this judicial caveat, I feel compelled here to disregard my own admonition. The majority of this Court has become far too "result oriented" in deciding criminal cases. Significant evidentiary and constitutional errors are avoided as the majority expeditiously moves to affirm the conviction. State v. McKenzie (1981) 38 St.Rep. 1745; State v. Arrow Weinberger (1983) 40 St.Rep. 844; State v. Gratzer (1984) 41 St.Rep. 727; State v. Sigler (1984) _____ St.Rep. _____.

I do not believe the majority is pandering to the editors and commentators who believe the courts are hypertechnical, or to the majority's "law and order" constituency. Rather I believe my brothers who avoid pivotal issue confrontation do so because of a subconscious desire to see the "guilty" pay for their misdeeds. The temptation to so yield is, at times, almost irresistible. However, as justices sworn to uphold the Constitution and the laws of this State, we cannot afford the luxury of indulging our sense of justice. Justice is for juries. Our role is to see that the law is properly applied. The present inclination to do justice arises from a sense of judicial divinity and the result is to elevate seven philosopher kings to a position above the law.

Members of our Court have, by way of dissent, been termed "intellectually dishonest." I find that expression inappropriate to adequately impart the intensity of my opposition to what seems a clear abrogation of judicial responsibility. Even though the majority has undoubtedly acted in good faith, failure to fully and accurately present the record and discuss the legal issues is, in my opinion, in derogation of the constitutional responsibilities of this office.

Justice

31

Mr. Justice John C. Sheehy, dissenting:

I dissent on at least two grounds.

First, I do not agree that the District Court properly excluded evidence of the changing theories of the crime committed, as shown by the amendments to the information. This conviction depended on the credibility of the State's witnesses. The amendments tend to show the inconsistency of the facts being reported to the State by these witnesses. If the variance in the reports being given to the State by the witnesses are of such gravity that the State must withdraw some criminal charges and insert others in their place, the jury in its search for truth should be allowed to know that.

Second, I want to disagree with the majority handling of the Smith instruction, although I agree the instruction was not appropriate in this case. The majority, though, relies on State v. Liddell (No. 83-276, Montana Supreme Court, decided July 10, 1984), for the proposition that the Smith instruction is improper. The Smith instruction was not raised as an issue by the defendant in Liddell; this Court gratuitously undertook to wipe it out. Here the principle of Smith does not apply. There is no victim malice involved and there is corroborative testimony.

_____
                    Justice

Mr. Justice Daniel J. Shea dissents and will file a written
dissent later.

32