FILED

March 1 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0255

DA 14-0255

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 48

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CHRISTOPHER MICHAEL AWBERY,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DC-2013-19
Honorable Jon A. Oldenburg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jennifer A. Hurley, Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

          Thomas P. Meissner, Fergus County Attorney, Jean A. Adams, Deputy
County Attorney, Lewistown, Montana

               Submitted on Briefs:  December 16, 2015

                             Decided:  March 1, 2016

Filed:

                                    _____
                                           Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1　　Christopher Michael Awbery appeals from his October 2013 conviction on six felony charges in the Montana Tenth Judicial District Court.　We affirm.

¶2　　We restate the issues on appeal as follows:

Issue One:　Did the District Court properly exclude evidence that some of the victims suffered prior sexual abuse by others?

Issue Two:　Is Awbery entitled to a new trial based upon prosecutorial misconduct?

Issue Three:　Is Awbery entitled to a new trial based upon the cumulative effect of the alleged errors?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3　　The State charged Awbery with two counts of incest against his daughter A.A. when she was age 12 or younger; with sexual assault and sexual intercourse without consent against A.A.'s half-sister J.G. when she was age 16 or younger; with sexual intercourse without consent against I.A. when she was age 12 or younger; and with sexual assault against N.H. when she was age 16 or younger.　All of the charges and the convictions were felonies.

¶4　　Each of the victims testified at trial, describing how they were sexually abused by Awbery.　His daughter A.A. testified that she awoke with Awbery on top of her, and that he dragged her by her hair to another room and raped her.　She described other incidents of rape; of Awbery penetrating her with a vibrator; and of Awbery touching her vaginal area with his fingers in a "game" that he called "check the oil."　She testified that Awbery threatened to hurt people close to her if she told anyone what he had done.

2

¶5     A.A.'s half-sister J.G. testified that Awbery repeatedly touched her vaginal area with his fingers and for a period of time raped her almost every day. Awbery similarly threatened J.G. that if she told anyone what he had done he would kill her mother. A.A.'s friend I.A. testified that Awbery also played "check the oil" with her; that he raped her on more than one occasion; and that he used a vibrator on her vaginal area. N.H., another friend of A.A., testified that Awbery touched her inappropriately on several occasions, and that she observed Awbery take other girls into rooms after which she would hear a scream and see the girl run out with her pants down.

¶6     The State presented the testimony of three expert witnesses. Dr. Wendy Dutton did not testify about the victims, the assaults against the victims, or whether the assaults had happened. Rather, she described the processes used by perpetrators of child abuse and the typical behaviors exhibited by girls who have been abused. Clinical counselor Michelle Feller testified about counseling she provided to A.A., J.G., and N.H. She had been a counselor for A.A. and J.G. since before the assaults by Awbery. She first diagnosed them with Post Traumatic Stress Disorder in March 2013, after the assaults by Awbery, and testified that they did not have the symptoms necessary to make a PTSD diagnosis prior to that time. Feller testified that N.H. had less severe symptoms, and diagnosed her with acute stress disorder. Feller described the general symptoms exhibited by victims of child sexual abuse and that she had seen those symptoms in A.A., J.G. and N.H. The State also presented the testimony of Morgan Mitchell, a therapist who provided counseling to I.A. She also described symptoms typically exhibited by child sexual abuse victims, and testified that she had observed them in I.A.

¶7    The District Court instructed the jury that the testimony of the experts "cannot be used to show that a crime here was committed or that the defendant committed it; nor can it be considered as an opinion by them that the alleged victims are telling the truth."

¶8    Awbery testified in his own defense, denying that he committed any of the acts described by the victims. The jury convicted him on all counts.

¶9    In March 2014 the District Court sentenced Awbery to terms in prison.

## STANDARD OF REVIEW

¶10    We review a district court's rulings on the admission of evidence to determine whether there was an abuse of discretion. *Beehler v. Eastern Radiological Assoc.*, 2012 MT 260, ¶ 17, 367 Mont. 21, 289 P.3d 131. We review a district court's application of a statute to determine whether it was correct. *Beehler*, ¶ 17.

## DISCUSSION

¶11    *Issue One:  Did the District Court properly exclude evidence that some of the victims suffered prior sexual abuse by others?*

¶12    Prior to trial the State moved that the defense be precluded from introducing evidence that A.A., J.G. and N.H. had each been sexually assaulted by others prior to Awbery's offenses. The State relied upon the exclusions of the Rape Shield Law, § 45-5-511, MCA. The apparent perpetrator against A.A. and J.G. was a man named Thompson who was convicted of sexual offenses as a result. The alleged perpetrator against N.H. was a man named Gallagher. That incident was not fully investigated because of the wishes of the victims' parents, and no charges were ever filed.

4

¶13 The defense argued that Awbery's constitutional right to present a defense was implicated and that it overcame the exclusions of the Rape Shield Law. According to the defense, the prior assaults increased the chance that the victims suffered PTSD as a result, and increased the chance that the allegations against Awbery were erroneous because the victims suffered from PTSD. Further, the defense stated that it did not intend to ask the girls themselves about the incidents, but predicted that the testimony of "perhaps family members, counselors, or Ms. Dutton might make [the prior incidents] relevant."

¶14 After hearing argument of counsel, the District Court refused to exclude the prior assault evidence outright, but warned that if it were admitted it would have to be "very, very relevant" and limited. The District Court stated that the prior "incidents are generally covered by the rape shield law and not admissible *unless testimony or an exception* makes it so." (Emphasis added.) The defense subsequently argued that Dutton's general background testimony established that PTSD could be a cause for subsequent erroneous allegations of sexual assault and that the PTSD diagnosed in some of Awbery's victims could come from the prior assaults.

¶15 The District Court ultimately excluded the defense from presenting evidence of the prior assaults against three of the victims because it would cause undue prejudice and would confuse and distract the jury. The District Court further noted that the record reflected that Feller's PTSD diagnosis was specific to the time of Awbery's offenses and that she testified that the PTSD did not exist as a diagnosable condition before Awbery's offenses. In addition, the District Court noted that there was no evidence that there was

5

any similarity between the prior incidents and Awbery's offenses and that the jury could be confused and distracted by hearing about other incidents.

¶16 The Montana Rape Shield Law provides:

> Evidence concerning the sexual conduct of the victim is inadmissible in prosecutions under this part except evidence of the victim's past sexual conduct with the offender or evidence of specific instances of the victim's sexual activity to show the origin of semen, pregnancy or disease that is at issue in the prosecution.

Section 45-5-511(2), MCA.

¶17 In 1975, Montana joined most other states by adopting a rape shield law. *See* Ch. 129, L. 1975. Under the Rape Shield Law, "evidence concerning the sexual conduct of the victim" is inadmissible in a criminal prosecution, with very limited exceptions not at issue here. Section 45-5-511(2), MCA. Montana's Rape Shield Law is designed to prevent the trial of the charge against the defendant from becoming a trial of the victim's prior sexual conduct. *State v. Higley*, 190 Mont. 412, 422, 621 P.2d 1043, 1050-51 (1980). Rape shield laws generally protect victims from being exposed at trial to harassing or irrelevant questions concerning their past sexual behavior. *Michigan v. Lucas*, 500 U.S. 145, 146, 111 S. Ct. 1743, 1745 (1991); *State v. Anderson*, 211 Mont. 272, 283, 686 P.2d 193, 199 (1984). They evolved from society's recognition that a rape victim's prior sexual history is irrelevant to issues of consent or the victim's propensity for truthfulness. Tanya Bagne Marcketti, *Rape Shield Laws: Do They Shield the Children?*, 78 Iowa L. Rev. 751, 754-55 (1993). The statute reflects a compelling state interest in keeping a rape trial from becoming a trial of the victim. *Anderson*, 211 Mont. at 283, 686 P.2d at 199.

6

¶18 Although rape shield legislation originally focused on adult rape victims, most jurisdictions also include child victims of sexual abuse within the protections of their rape shield statutes. In 1985 the Montana Legislature broadened the applicability of the Rape Shield Law to include cases involving all types of sexual abuse. *See* Sec, 3, Ch. 172, L. 1985. The policies underlying the application of rape shield statutes to adult victims apply to child victims as well: rape shield statutes eliminate the need for victims to defend incidents in their past and minimize the trauma of testifying. Marcketti at 756.

¶19 Conflict can arise between rape shield statutes and a defendant's Sixth Amendment rights to confront his accuser and to present evidence at trial in defense of the charge against him. A defendant charged with a crime has a right, arising from the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution, to confront his accusers. *State v. MacKinnon*, 1998 MT 78, ¶ 33, 288 Mont. 329, 957 P.2d 23. A defendant has a similarly-based right to present evidence in his defense. *State v. Johnson*, 1998 MT 107, ¶ 22, 288 Mont. 513, 958 P.2d 1182.

¶20 Neither the Rape Shield Law nor the defendant's right to confront and to present evidence are absolute. *MacKinnon*, ¶ 33; *Johnson*, ¶¶ 22-23. The Rape Shield Law cannot be applied to exclude evidence arbitrarily or mechanistically, *Johnson*, ¶ 21, *State v. Colburn*, 2016 MT 41, ¶ 25, 382 Mont. 223, ___ P.3d ___, and it is the trial court's responsibility to strike a balance between the defendant's right to present a defense and a victim's rights under the statute. *State v. Lindberg*, 2008 MT 839, ¶ 53, 347 Mont. 76, 196 P.3d 1252. A court balancing the interests of the defendant with those protected by the Rape Shield Law should require that the defendant's proffered evidence is not merely

7

speculative or unsupported. *Johnson*, ¶ 24; *Lindberg*, ¶ 56. The court should consider whether the evidence is relevant and probative (Rules 401 and 402, M. R. Evid.); whether the evidence is merely cumulative of other admissible evidence; and whether the probative value of the evidence is outweighed by its prejudicial effect (Rule 403, M. R. Evid.); *Commonwealth v. Fernsler*, 715 A.2d 435, 440 (Pa. Sup. Ct. 1998). The purpose of these considerations is to ensure a fair trial for the defendant while upholding the compelling interest of the Rape Shield Law in preserving the integrity of the trial and keeping it from becoming a trial of the victim. *Anderson*, 211 Mont. at 283, 686 P.2d at 199.

¶21 We conclude that the District Court properly applied the Rape Shield Law and properly precluded the defense from presenting evidence and argument concerning the prior incidents involving three of Awbery's victims. The District Court ruled that Awbery had not established a sufficient foundation to admit the evidence, and recognized that Awbery could not make a showing that the evidence was admissible as an exception to the Rape Shield Law, properly balancing the interests involved. It is clear that the defense theory—that three of his victims suffered prior abuse which left them suffering from PTSD which caused them to make erroneous reports against Awbery—never progressed past conjecture and speculation. There was no evidence that any of the victims suffered from PTSD prior to Awbery's assaults, and no evidence that any condition the victims suffered resulted in their making false accusations. The testimony of the State's experts did not support the defense theories, and it specifically defused the theory of infliction of PTSD prior to Awbery's offenses.

8

¶22 Further, there was no clear evidence of the prior acts, either the facts of the abuse or the effects of it upon the victims. While Thompson was convicted of offenses, the defense presented no evidence or offer of proof about the nature of those offenses or whether there was any similarity to the acts allegedly perpetrated by Awbery. Further, in the case of the allegations involving Gallagher, there was no evidence that the prior acts even occurred. The defense disclaimed any intent to ask the girls themselves about the prior incidents, and it was never made clear how or to what extent the defense intended to present evidence of the nature and extent of the prior incidents. This clearly, as the District Court recognized, presented a considerable risk of turning the trial into a second case involving incidents unrelated to Awbery's offenses. We agree with the District Court that there would have been a high risk of jury confusion.

¶23 This Court recently considered similar issues in *Colburn*, in which the defendant was convicted of sexual intercourse without consent, sexual assault, and incest. The victims were the defendant's own daughter and a second girl, who were both age 11 at the time of the offenses. Defendant's daughter testified at trial and generally denied that her father abused her. However, a nurse practitioner who had experience interviewing assault victims interviewed the daughter and testified to statements that the daughter made about the defendant's abusive conduct. The State also played a tape of that interview for the jury. The tape was the "major direct evidence to support the incest charges." *Colburn*, ¶ 12. The second girl also testified, and described Colburn's abuse in detail. The State's expert also interviewed the second girl and testified that in her opinion

9

the second girl would not have exhibited her detailed sexual knowledge unless she had actually experienced abuse.

¶24　Colburn's defense was based upon showing that the nurse who interviewed his daughter used leading and suggestive questions, and that proper interviewing technique could have yielded different results. The defense proposed to call an expert to critique the interview techniques used to obtain the statements from defendant's daughter. The defense further contended that the second victim may have fabricated her allegations against the defendant. In particular, the defense sought to introduce evidence that a month after making her allegations against the defendant, the second girl disclosed to another forensic interviewer that she had been sexually abused by her own father. The defense sought to introduce evidence that the second girl stated that she made the allegations against Colburn to "test the waters," to determine whether adults would believe her allegations. When adults accepted her allegations against the defendant, she felt comfortable with making the accusations against her own father.

¶25　The District Court in *Colburn* excluded the defense expert's testimony on forensic interviewing techniques, and, based upon the Rape Shield Law, prohibited any evidence that the second victim had suffered prior abuse from her own father. This Court determined that the district court in that case wrongly excluded the defense expert on interviewing techniques, and that it applied the Rape Shield Law without considering and balancing the defendant's right to present a defense with the interests of the victims. The defense laid a proper foundation for its proposed evidence and its theories were not based

10

upon mere speculation. Therefore, we reversed the conviction in *Colburn* and remanded for a new trial.

¶26 In this case, by contrast, the District Court carefully considered Awbery's right to present a defense to the charges; weighed it against the interests protected by the Rape Shield Law; and ruled that Awbery might be allowed to present evidence of prior abuse if it were made relevant by trial testimony. While there was expert prosecution testimony in *Colburn* that tied one victim's sexual knowledge to her having been abused, there was not that same kind of testimony in Awbery's case. Further, there was no evidence to tie prior abuse of Awbery's victim to the development of PTSD as a reason for mistaken testimony. The two cases are factually distinct.

¶27 The District Court properly precluded Awbery from raising issues regarding prior offenses against three of the four victims.

¶28 *Issue Two: Is Awbery entitled to a new trial based upon prosecutorial misconduct?*

¶29 Awbery contends that remarks by the County Attorney in closing argument were prejudicial, improper and denied him a fair trial. He contends that the County Attorney urged the jury to consider the charges together, rather than to consider each charge separately; that the County Attorney improperly described the victims as "courageous" girls who should be supported; and that the County Attorney personally vouched for the credibility of witnesses. The defense did not object to any part of the closing argument, and requests that this Court undertake plain error review.

¶30   This Court generally does not consider allegations of prosecutorial misconduct in closing argument unless there was a contemporaneous objection at trial. However, those allegations can be reviewed under the plain error doctrine. *State v. Hayden*, 2008 MT 274, ¶¶ 29-30, 345 Mont. 252, 190 P.3d 1091. Plain error review is discretionary and occurs only when the situation implicates the defendant's fundamental constitutional rights, and when failing to review may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial, or may compromise the integrity of the judicial process. *State v. Aker*, 2013 MT 253, ¶ 21, 371 Mont. 491, 310 P.3d 506. We do not presume prejudice to the defendant from alleged improper argument, and the defendant must show that the argument violated his substantial rights. *Aker*, ¶ 24.

¶31   Upon reviewing Awbery's arguments on this issue, we decline to undertake plain error review of the alleged errors. The prosecutor may comment on conflicts and contradictions in testimony and upon the evidence, and may suggest inferences that the jury can draw from the evidence. The prosecutor may comment on the gravity of the crime, the volume of the evidence, the credibility of the witness and the instructions given by the court. *Aker*, ¶¶ 26-27. Awbery has not demonstrated that the prosecutor's statements during closing rose to a level that trigger the threshold for undertaking plain error review.

¶32    *Issue Three:  Is Awbery entitled to a new trial based upon the cumulative effect of the alleged errors?*

¶33    Based upon our disposition of the first two issues, we decline to consider Awbery's contention that he is entitled to a new trial based upon cumulative error.

**CONCLUSION**

¶34    After careful consideration of the arguments and authorities of the parties, we affirm the convictions.

¶35    Affirmed.


/S/ MIKE McGRATH


We Concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE


Justice Patricia Cotter, concurring.

¶36    I concur in the decision of the Court upholding the defendant's convictions.  I write separately to set forth the basis for my concurrence.

¶37    As the Court observes, we recently issued an opinion in *State v. Colburn*, in which we reversed the defendant's conviction on two grounds.  We concluded the District Court abused its discretion in disqualifying Colburn's expert witness from testifying at trial, and erred in its application of the Rape Shield law to exclude evidence that Colburn offered at

trial. *Colburn*, ¶¶ 18, 29. The evidence that Colburn sought to introduce at trial centered upon the fact that the victim, R.W., had been abused by her father who had been convicted of assault, and thus the source of her detailed knowledge concerning sexual activity (a centerpiece of the case against Colburn) came not from Colburn but from the abuse her father inflicted. *Colburn*, ¶ 20.

¶38 Similarly, in this case, the defendant alleged that victims A.A. and J.G. were victims of prior assaults by an individual who was convicted of assault. As the Court notes, the defendant attempted throughout the trial to present evidence that the prior assaults increased the chance that the allegations against Awbery were based upon the victims' PTSD, and/or that the PTSD diagnosed in some of the victims actually resulted from their prior assaults. Although *Colburn* and this case share the important unrefuted fact that the respective victims had been previously assaulted, I would conclude for the reasons set forth below that *Colburn* does not control here, and that the District Court did not abuse its discretion in excluding evidence of the previous assaults from the jury's consideration.

¶39 In *Colburn*, the State introduced the testimony of nurse practitioner Hansen, who interviewed R.W. and testified that her statements were consistent with those of a child who had experienced sexual abuse. She stated a child would not have the detailed sexual knowledge R.W. possessed unless the child had been sexually abused. *Colburn*, ¶ 11. The State relied upon Hansen's testimony to argue that R.W.'s sexual knowledge must have resulted from Colburn's abuse. Colburn countered that the fact that R.W. had been assaulted by her father would establish that her sexual knowledge was gained from those

14

assaults rather than from any assault by him. Thus, there was an immediate relevant straight-line connection between the lynchpin of the State's case against Colburn (R.W.'s sexual knowledge) and the fact that R.W. had been previously assaulted by her father.

¶40 Connecting the dots in this case is far less certain and far more complicated. Awbery sought to offer an alternative explanation for the victims' psychological symptoms, alleging that their PTSD and anxiety could have been the result of sexual abuse by others and could also have caused them to fabricate allegations against him. There are evidentiary impediments to establishing this defense. First, it is not clear from the record how Awbery intended to introduce into evidence the prior incidents involving the victims so as to illuminate the cause of their psychological conditions, as he represented to the court that he did not intend to ask the victims any such questions. He said he would instead introduce the evidence "perhaps [through] family members, counselors, or Ms. Dutton." He later advised the court during trial that he could introduce evidence of these other incidents through another named witness, counselor Feller, and/or a police officer. However, he never identified the witness through whom the evidence would be introduced, nor did he make an offer of proof in this regard. M. R. Evid. 103(2).

¶41 Second, even if Awbery had been allowed to introduce evidence of the prior assaults, the task remained for him to elicit testimony tying the victims' PTSD and other psychological conditions to the prior assaults, and/or establishing that their PTSD led them to fabricate the evidence against him. The defendant called no expert witness to render these conclusions, and the prospect of gaining such admissions on

15

cross-examination of the state's expert and the children's therapists was dubious. As the State pointed out during argument in chambers, it was not the prior instances of alleged abuse that were speculative or unsupported; rather, it was the claimed defenses of fabrication and erroneous reporting (as well as the defense that the victims' PTSD and other psychological conditions could have resulted from prior abuse) that were speculative and unsupported.

¶42 In denying Awbery's request to introduce into evidence allegations of prior abuse, the District Court concluded that the proposed evidence would confuse and distract the jury and get the court into "time consuming sideshows." The court reasoned that "we could go on weeks on weeks trying to determine what the PTSD in these children[,] given their lifestyle and given the things that have happened to them in the past, is." The court further observed that the testimony of counselor Feller was specific to the symptoms she has observed in these victims and very specific to this defendant.

¶43 Regardless of whether a case involves the Rape Shield law or another statutory or common law evidentiary rule, it is axiomatic that the District Court has broad discretion to exclude potentially relevant evidence where its probative value is substantially outweighed by the danger of confusion of the issues, the misleading of the jury, or by considerations of waste of time. M. R. Evid. 403; *State v. Passmore*, 2010 MT 34, ¶ 64, 355 Mont. 187, 225 P.3d 1229. Given the protracted and confusing lengths to which the defendant would have to go to connect the prior assaults to the victims' various psychological conditions and the lack of any clear path to get there, I conclude that the

16

court did not abuse its discretion in excluding the subject evidence. I would therefore affirm.

/S/ PATRICIA COTTER


Justices Beth Baker and Laurie McKinnon join the concurrence.

/S/ BETH BAKER
/S/ LAURIE McKINNON

17