# IN THE COURT OF APPEALS OF IOWA

No. 17-0531
Filed November 7, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**PAUL R. KNUDSEN,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Grundy County, Joel A. Dalrymple, Judge.


        The defendant challenges his convictions and sentences for three counts of sexual abuse in the third degree and one count of lascivious conduct with a minor. **JUDGMENT AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED FOR ENHANCEMENT HEARING, SENTENCING, AND JUDGMENT.**


        Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.


        Heard by Vogel, P.J., Tabor, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**BLANE, Senior Judge.**

Our original opinion in this case, filed October 10, 2018, was vacated when we granted Paul Knudsen's petition for rehearing. *See* Iowa R. App. P. 6.1204(5) ("If the petition for rehearing is granted, the decision of the court of appeals is vacated and the court of appeals shall retain jurisdiction of the case.")

Knudsen challenges his convictions and sentences for three counts of sexual abuse in the third degree and one count of lascivious conduct with a minor. Knudsen challenges the sufficiency of the evidence to support one of his convictions for sexual abuse in the third degree, claims the court wrongly applied the rape-shield law to prevent the admission of evidence of prior allegations of sexual abuse made by the complaining witnesses, and maintains the court abused its discretion in preventing the defense's expert from testifying that three-way sexual abuse involving the mother is rare. He also maintains he did not knowingly and voluntarily enter into the stipulation that he was subject to the sentencing enhancements.

**I. Background Facts and Proceedings.**

Knudsen was charged by trial information with three counts of sexual abuse in the third degree (counts I, II, and III) and one count of lascivious conduct with a minor (count IV). Each of the three counts of sexual abuse involved the same minor child, A.M., who lived in the same home as Knudsen. The dates the events were alleged to have occurred and A.M.'s age at the time of the events differed. In count IV, it was alleged that between September 8, 2009 and August 2012, Knudsen forced, persuaded, or coerced A.L., a minor who Knudsen was in a position of authority over, to disrobe or partially disrobe for the purpose of satisfying

at least one of their sexual desires. For sentencing-enhancement purposes, it was additionally alleged that Knudsen had been previously convicted of sexual abuse.

Leading up to the jury trial, the State filed a motion to strike certain defense witnesses and a motion in limine. In its motion to strike witnesses, the State asked the court to prevent Hollinda Wakefield from testifying at trial, maintaining that based on the questions asked of Wakefield in her deposition, Knudsen "clearly . . . intends to call this witness solely to comment on the credibility of the witnesses through expert testimony." In his response to the State's motion, Knudsen maintained he wanted to call Wakefield as an expert in the field of child sexual abuse and claimed she would testify to a number of things, including "how unusual it would be for a mother to be involved in a three way sexual relationship with her daughter and [Knudsen]."

In its motion in limine, the State asked the court to direct the defense not to refer at any stage of the trial to "[a]ny evidence regarding either of the victims' past sexual history or any other matters in violation of Iowa Rule of Evidence 5.412," including A.M.'s "prior sexual abuse by other family members." Knudsen responded:

> The defense intends to explore the past sexual assaults of the two alleged victims in this case. The defense does not intend to explore the details of the assaults, or to violate the tenants of the rape/shield laws, but does intend to ask each alleged victim the following:
> a. Were you sexually assaulted in the past?
> b. Did this sexual assault occur while Paul Knudsen was married to your mother?
> c. Who committed the sexual assault?
> d. Did you report the sexual assault to your mother and [Knudsen]?
> e. Did they support you in your allegations?
> f. Did they report your allegations to law enforcement?

g. Was the perpetrator prosecuted?

h. Was the perpetrator convicted?

i. Were you aware of the punishment awarded the perpetrator?

j. At the time you made allegations against the prior perpetrators, did you make any accusations against either your mother or [Knudsen]?

k. Have you made any other allegations of sexual abuse since the allegations against Paul Knudsen?

l. Did those allegations result in charges against these alleged perpetrators?

After a joint hearing on the pretrial motions, the court issued a written ruling in which the court found "Iowa Rule of Evidence 5.412, otherwise known as the rape shield law, to be dispositive" on the issue of whether Knudsen could ask the complaining witnesses about their experiences involving prior sexual abuse by family members. In sustaining the State's motion in limine, the court "considered the arguments and proposed evidence by the defense, and finds, however relevant, that the probative value of such evidence fails to outweigh the danger of unfair prejudice and as such the evidence is not admissible." Regarding the State's motion to strike defense witness Wakefield, the court did not prevent the witness from testifying completely but did outline areas about which Wakefield was prevented from testifying. The court ruled that Wakefield could not testify that a three-way sexual encounter involving a mother, her daughter, and Knudsen would be "unusual" or "rare," stating:

First and foremost, with the evidence presented or arguments of counsel thus far, the Court finds the witness lacks any expertise in her opinion relating to the purported testimony. Even if qualified as an expert in the area in question, the Court does not find any testimony from the witness to be permissible, nor does it find any such testimony would aid the finder of fact in this matter. Consequently, the [S]tate's motion relating to any questions of that nature shall be sustained.

The jury trial took place over several days in February 2017. During the testimony of the nurse who performed a sexual-assault examination on A.M., the nurse was asked what type of injuries she is looking for during the exam. She testified:

> Well, you know, if there is any old injury that may have healed. Sometimes you'll see kind of some scarring in different areas. You may see in the hymen there may be a healed we call it a transection or which is where the hymen may have been torn and then healed but that split is still there.
> You may have what's called a cleft, which is kind of where it's been worn away but it's not necessarily been completely split. You may have some—if it's an acute type of thing you may see some bleeding, you may see some abrasions, which is kind of a roughening of the skin where you might have some redness or some swelling, or you might even see some bruising depending on what happened. So those are all the kinds of things that we're looking for when we're doing that.

When asked if she "note[d] anything that may be considered an injury" while examining A.M., the nurse testified, "Yes. . . . I described it as a cleft." The State admitted into evidence and published to the jury four pictures of A.M.'s hymen that were taken during the physical exam. The nurse also opined that the cleft could be "normal for that person's body to look like that"—a "normal variation."

Following the nurse's testimony, the court reconsidered its prior ruling on the State's motion in limine regarding whether the defense could mention or ask questions about prior sexual abuse A.M. had experienced. In reconsidering its prior ruling, the court stated:

> [T]he court heard testimony yesterday and received . . . [e]xhibits . . . regarding the colposcopic examination and photographs that depict what could be construed as injury to the female victim's hymen. Obviously that's debatable, but clearly the State's intention is to offer that for the purposes of showing a potential source of injury or trauma as a result of penetration.
> . . . .

. . . The issue is that during the course of all of that going on, it became apparent to the court that the incident involving [a family member who sexually abused A.M.] obviously preceded or theoretically preceded this; that there is, based on that then, an argument to be made that the source of the injury contained in the photographs that have been introduced could be from penetration from [the family member]. [The family member] was, in fact, convicted of sex abuse and that those allegations did involve penetration of the same victim.

Flashing back to pretrial motions that we had, the court did sustain the State's motion in limine relating to rape shield. . . . [T]he Court was not aware that there was going to be the introduction of evidence relating to this injury; and more importantly, the Court was not aware of the fact that [the family member] could have been a potential source of this injury or trauma. I know it now. And knowing that now, I think I have no choice but to reconsider my [ruling on the] motion in limine.

. . . [I]t would be my intention that my ruling remains the same. That to the extent that the defense wants to introduce evidence, make argument, anything regarding the victim's past sexual behavior or past sexual encounters, victimization, however you want to characterize it, that does not open the door to the defense making any argument regarding her propensity to accuse people. It does not open any argument to her propensity to fantasize or anything that can be construed that these allegations against this defendant are false.

However, I think that this is quintessential exception, the injury itself is a quintessential exception to the rape shield provisions in that the defense ought to be able to show an alternative source of this injury. . . .

. . . The parties, either side, particularly the defense can explore the fact that the source of injury as identified in the exhibits and from the testimony of [the nurse] could have come from an alternative trauma; that trauma being an abuse that occurred earlier, sometime in 2012 or at least in the time frame of around 2012. The parties know better the actual duration of it and when it's alleged again; and that it was more than one occasion.

And so that it was an ongoing type of thing as opposed to an isolated incident, which is, again, consistent with rebutting, essentially, any testimony that came from [the nurse]. But that's the sum and substance what I believe is relevant and could come in consistent with the rape shield 412 rule.

Later, Knudsen asked A.M. if she had "intercourse voluntarily or involuntarily" with

someone other than Knudsen prior to 2014, if it occurred on multiple occasions,

and if it preceded the time when she made allegations against Knudsen. A.M. answered "yes" to each question. During redirect, the State also asked A.M. questions about the prior abuse, asking when she testified that she had engaged in sexual intercourse multiple times if she was referencing "consensual or nonconsensual priors." A.M. testified, "Nonconsensual." Later, during his closing argument, Knudsen revisited the issue, stating:

> The State put up some really wonderful intimate photographs of [A.M.'s] hymen and tried to get you to believe that, first of all, the hymen was injured; and that Paul Knudsen was the one who injured it.
> What do you really know? One, [the nurse] said that could be just a typical normal hymen. She can't say that that was—that that was something that was caused by sex abuse. And the most important other thing she said is that even if it were sex abuse, she can't say that it was Paul Knudsen.
> Now weren't you surprised when [A.M.] was testifying to find out that before these allegations with Paul Knudsen came up that she had been sexually abused by vaginal intercourse by somebody else? Not Paul Knudsen? Was that a surprise to you? I would think it probably was because the state wanted you to think that it was Paul who did this if it wasn't a normal hymen.
> The bottom line is you don't know. You can't take anything out of that physical exam that puts any, any kind of negative connotation on my client. Because there are three potential possibilities and him being a sexual abuser is only one. And you know if [A.M.] was sexually abused prior to that on multiple occasions, that the likelihood, if that's an injury, came from that person.

A.M. testified she was born in January 2000. When she was fourteen and a freshman in high school, in November 2014, A.M. told her therapist that Knudsen had been sexually abusing her. A.M. testified the abuse happened more than once, that she was unsure how many times it occurred, and that it occurred a number of places in the family home, including her "bedroom, the bathroom, the upstairs bathroom, the living room, the laundry room, and sometimes his

bedroom"; in Knudsen's car; and at the property of Knudsen's family member. She testified Knudsen had most recently abused her only a day or two before she told her therapist and she remembered that the abuse also occurred when she was in seventh grade and eighth grade. A.M. testified she could not remember if Knudsen abused her when she was in sixth grade. When asked to describe what she meant when she said sexual abuse, A.M. testified, "His penis would touch my vagina, my mouth, my hands." She later clarified Knudsen's penis entered her vagina and stated she remembered that occurring when she was a freshman and in eighth grade but did not remember if it happened when she was in seventh grade. She also testified that she remembered Knudsen forcing her to perform oral sex on him before he would give her a ride to cheerleading practice; A.M. participated in cheerleading when she was in eighth grade.

A.L. testified about an instance when Knudsen forced him to go to the basement of the family home and have sex with A.M while Knudsen also forced A.M. to perform sex acts on him. A.L. testified Knudsen made him remove his clothing during this incident.

The jury found Knudsen guilty of each of the four charges. Knudsen indicated that rather than have a second trial regarding whether he was the individual who was previously convicted of sexual abuse in the third degree, Knudsen would stipulate that the sentencing enhancements applied to him.

Because of his prior conviction for sexual abuse in the third degree, each of Knudsen's convictions for counts I, II, and III were enhanced to a class "A" felony.

*See* Iowa Code § 902.14(1)(b) (2015).[1] The convictions each carried a mandatory sentence of life imprisonment without eligibility for parole unless the governor commutes the sentence, and Knudsen was sentenced accordingly. *See* Iowa Code § 902.1(1). Additionally, the sentence for count IV was doubled, from one year to two years. *See* Iowa Code § 901A.2(1).

Knudsen appeals.

## II. Discussion.

### A. Sufficiency of the Evidence.

Knudsen maintains there is insufficient evidence to support his conviction for count II of sexual abuse in the third degree. We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). In considering his challenge, we "consider all of the record evidence viewed 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *Id.* (citation omitted).

#### 1. Error Preservation.

"To preserve error on a claim of insufficient evidence for appellate review in a criminal case, the defendant must make a motion for judgment of acquittal at trial that identifies the specific grounds raised on appeal." *State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004). The State maintains Knudsen failed to preserve error on this issue. We disagree. On appeal, Knudsen challenges whether the

---

[1] The year the crimes were alleged to have occurred varied. Because there was no substantive change in the relevant code sections between the years the acts were alleged to have occurred and the time Knudsen was formally charged—in 2015—we refer to 2015 Iowa Code throughout.

State provided sufficient evidence to establish that the sex act occurred before A.M. turned fourteen. *See* Iowa Code § 709.4(1)(b)(2) (defining sexual abuse in the third degree as a person committing a sex act upon a person who is twelve or thirteen years of age). At the time Knudsen moved for judgment of acquittal, he stated, "We don't believe that the State's witnesses were able to set in any timelines or specific timelines that would show when these offenses or these alleged offenses would have happened." The court denied Knudsen's motion, stating that a fact question had been generated as to whether a sex act occurred upon A.M. during the required time frame,[2] so it was proper for the jury to decide the issue.

### 2. Merits.

"The State has the burden to prove every fact necessary to constitute the crime with which the defendant is charged, and the evidence presented must raise

---

[2] We acknowledge that the court referenced the dates listed in the trial information when it stated there was a fact question about whether the sex act occurred during the required time frame. However, the dates included on the trial information are not an element of the crime. *See State v. Brown*, 400 N.W.2d 74, 77 (Iowa Ct. App. 1986) ("The date fixed in the indictment or information for the commission of a crime is not material, and a conviction can be returned upon any date within the statute of limitations."). The age of A.M. at the time of the act is a necessary element. *See* Iowa Code § 709.4(1)(b)(2).

Moreover, if error was not preserved, Knudsen asks us to consider the claim under the ineffective-assistance-of-counsel framework, which relies upon the same analysis. *See Truesdell*, 679 N.W.2d at 616 ("A claim of ineffective assistance of trial counsel based on the failure of counsel to raise a claim of insufficient evidence to support a conviction is a matter that normally can be decided on direct appeal. Clearly, if the record in this case fails to reveal substantial evidence to support the convictions, counsel was ineffective for failing to properly raise the issue and prejudice resulted. On the other hand, if the record reveals substantial evidence, counsel's failure to raise the claim of error could not be prejudicial." (citation omitted)); *see also State v. Schories*, 827 N.W.2d 659, 664–65 (Iowa 2013) ("In any event, the question of preservation hardly matters because [the defendant] may raise the issue through a claim of ineffective assistance of counsel. . . . [I]n order to determine the ineffectiveness issue on this appeal, we are only required to determine whether the motion would have been meritorious even if the sufficiency of the evidence challenge had not been preserved.").

a fair inference of guilt and do more than create speculation, suspicion, or conjecture." *State v. Kemp*, 688 N.W.2d 785, 789 (Iowa 2004). Here, the jury instructions for count II required the State to establish:

> 1. Between September 8, 2009 and August 2012, the defendant performed a sex act on [A.M.].
> 2. The defendant performed the sex act while [A.M.] was under the age of 14 years.
> 3. The defendant and [A.M.] were not then living together as husband and wife.

Knudsen's challenge to the sufficiency of the evidence focuses on A.M.'s testimony that Knudsen forced her to perform oral sex on him before he would give her a ride to cheerleading practice. Knudsen argues that because A.M.'s testimony only narrowed the timing of these incidents down to while she was in eighth grade, she could have been either thirteen or fourteen years of age, as she turned fourteen in January during that school year.

A.M. testified she was a cheerleader for football, basketball, and wrestling. In its closing, the State referred to them as "fall sports," but there is no evidence in the record of what dates during eighth grade A.M. was a cheerleader; we cannot say whether these sports took place only in the fall of 2013 or if they also continued into January 2014, after A.M. turned fourteen. However, while the State argued the jury should find Knudsen guilty of count II based on this specific factual scenario, Knudsen has not provided, and we have not found, any authority that the jury was then required to consider solely this incident of abuse in determining if Knudsen was guilty of count II of sexual abuse in the third degree.

Knudsen focuses solely on the testimony of A.M. as inadequate to establish two separate acts of sexual abuse while she was under fourteen years of age to

support his convictions on both counts II and III. But we are not limited to looking at only A.M.'s testimony to determine sufficient evidence; we are able to view all of the evidence. *See State v. Constable*, 505 N.W.2d 473, 478–79 (Iowa 1993) (stating we examine "all evidence presented at trial" and where the court found, viewing the testimony in the light most favorable to the State, substantial evidence existed upon which a jury could find beyond a reasonable doubt that defendant committed sex acts). Knudsen ignores the testimony of A.L. When the testimony of both A.M. and A.L. is reviewed, the jury could have found sufficient evidence to convict Knudsen of both counts II and III.

A.M. testified she was sexually abused by Knudsen while she was in seventh grade—during which she was always under the age of fourteen. She clarified that by sexually abused, she meant "[h]is penis would touch my vagina, my mouth, my hands." *See* Iowa Code § 702.17(1), (2), (3) (defining "sex act" as "[p]entration of the penis into the vagina," "[c]ontact between the mouth and genitalia," and "[c]ontact between the finger or hand of one person and the genitalia . . . of another"). This evidence would support one count.

Based upon the testimony of A.L., Knudsen forced A.L. to have intercourse with A.M. and, at the same time, Knudson also forced A.M. to perform oral sex upon him. A.M. corroborated A.L.'s testimony about Knudsen forcing A.L. to have sex with her. A.L. was certain that this occurred during the fall he was in the seventh grade. A.L. was born in December 1998 and is thirteen months older than A.M; A.L. was thirteen years of age in the seventh grade until he turned fourteen in December. Therefore, the jury could have found that A.M. was under fourteen years of age when the events involving both A.L. and Knudsen occurred. This

would be sufficient evidence to support that Knudsen committed a second separate sex act with A.M. while she was under fourteen years of age. Based upon our review of the record evidence, particularly the testimony of both A.M. and A.L., there was sufficient evidence to support the jury's verdicts on each count. *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) (finding the child victim's testimony was sufficient to constitute substantial evidence of the defendant's guilt). The trial court properly denied Knudsen's motion for judgment of acquittal.

### B. Rape-Shield Law.

Knudsen maintains he should have been allowed to introduce evidence that A.M. had previously made allegations of sexual abuse to her mother and Knudsen about a different family member and how Knudsen and the mother reacted to the allegations. He claims such information does not fall within the rape-shield prohibition against "other sexual behavior,"[3] contained in Iowa Rule of Evidence 5.412. Alternatively, he maintains that even if the information falls within the prohibition, the court should have admitted it under the exception contained in rule 5.412(b)(1)(C), which allows the admission of evidence of "other sexual behavior" in criminal cases where the exclusion of the evidence "would violate the defendant's constitutional rights."

We generally review trial court rulings on admissibility of evidence under rule 5.412 for an abuse of discretion. *See State v. Alberts*, 722 N.W.2d 402, 407 (Iowa 2006). However, to the extent that Knudsen alleges the evidence is

---

[3] Before January 1, 2017, the rule referenced "past sexual behavior" instead of "other sexual behavior." The changed language of "other sexual behavior" now mirrors that of the federal rule. *Compare* Fed. R. Evid. 412, *with* Iowa R. Evid. 5.412. Trial was held in February 2017.

admissible under the exception invoking his constitutional rights, we review de novo. *See State v. Mitchell*, 568 N.W.2d 493, 499 (Iowa 1997).

### 1. Error Preservation.

The State maintains Knudsen only preserved error to the evidentiary challenge, asserting the "constitutional dimension" of his claim was not raised below and "[a] defendant cannot amplify or change the objection on appeal." *State v. Hepperle*, 530 N.W.2d 735, 738 (Iowa 1995). As Knudsen responds, the evidentiary rule incorporates the constitutional safeguard. *See* Iowa R. Evid. 5.412(b)(1)(C) (stating the court may admit evidence whose exclusion would violate the defendant's constitutional rights). And the district court apparently considered whether Knudsen's constitutional rights required the admission of the evidence, as it stated it considered the "proposed evidence by the defense, and finds, however relevant, that the probative value of such evidence fails to outweigh the danger of unfair prejudice and as such the evidence is not admissible." *See* Iowa R. Evid. 5.412(c)(2)(C) (requiring the court, when it determines that the offer of proof contains evidence described in the listed exceptions in rule 5.412(b), to determine if the evidence is admissible by determining if the evidence is relevant and if the probative value outweighs the danger of unfair prejudice). Error is preserved.

### 2. Merits.

The rape-shield law, as Iowa Rule of Evidence 5.412 is otherwise known, is an exception to the rule that relevant evidence is generally admissible. *State v. Clarke*, 343 N.W.2d 158, 160–61 (Iowa 1984). The rule prohibits the admission of "[e]vidence of a victim's other sexual behavior." *See* Iowa R. Evid. 5.412(1)(2).

The purpose is "to protect the victim's privacy, encourage the reporting and prosecution of sex offenses, and prevent the parties from delving into distractive, irrelevant matters." *Alberts*, 722 N.W.2d at 409.

In determining what evidence the rape-shield law prohibits, our supreme court has previously defined "past sexual behavior"[4] as

> a volitional or non-volitional physical act that the victim has performed for the purpose of the sexual stimulation or gratification of either the victim or another person or an act that is sexual intercourse, deviate sexual intercourse or sexual contact, or an attempt to engage in such an act, between the victim and another person.

*Id.* at 408 (citation omitted). The definition "clearly encompasses prior sexual abuse perpetrated upon the victim." *State v. Jones*, 490 N.W.2d 787, 790 (Iowa 1992), *overruled on other grounds by State v. Plain*, 898 N.W.2d 801, 826 (Iowa 2017).

In determining whether the admission of evidence is prohibited by the rule, we do not consider the defendant's motive for introducing the evidence. *See Mitchell*, 568 N.W.2d at 497. "An accused may attempt to offer evidence of the victim's past sexual behavior either to confront real evidence . . . or to impugn the victim's character. In either case, the victim's privacy is invaded and for that reasons the rule applies." *Id.*

In arguing that the evidence of A.M. telling her parents about prior sexual abuse and their responses to that information should have been admitted at trial, Knudsen tries to delineate between the prior sexual abuse and A.M.'s reporting of

---

[4] We assume the change in language from "past sexual behavior" to "other sexual behavior" was not meant to cause a substantive change in the interpretation of the rule.

the abuse. But Knudsen's argument creates a distinction without a difference, as the prior sexual abuse is at the basis of the evidence he wishes to introduce. And while the defendant's motivation for trying to introduce the evidence cannot cure the issue, here, even Knudsen's stated reason for introducing the evidence is at odds with the purpose of the rule. During the hearing on the motion in limine, Knudsen stated that he wanted to introduce the evidence "to challenge her credibility." *See, e.g.*, *State v. Awbery*, 367 P.3d 346, 349 (Mont. 2016) (noting rape-shield laws "evolved from society's recognition that a rape victim's prior sexual history is irrelevant to issues of consent or the victim's propensity for truthfulness"). The evidence that A.M. had been sexually abused previously, had told her mother and Knudsen about the abuse, and their responses to the information falls within the rape-shield prohibition against the admission of "other sexual history."

Next, we must consider whether the evidence should have been admitted anyway, under an exception to the rape-shield law. We begin by noting that some evidence of the previous sexual abuse that A.M. endured was made known to the jury, through questions asked of A.M. by the both State and Knudsen. In a reconsideration of its ruling on the motion in limine, the court determined the evidence A.M. had been sexually abused vaginally before the sexual assault nurse examined her regarding her allegations of abuse of Knudsen was admissible to show the cleft the nurse noted may have been an injury attributable to someone other than Knudsen. *See* Iowa R. Evid. 5.412(b)(1)(A) (allowing the court to admit "[e]vidence of specific instances of a victim's sexual behavior, if offered to prove

that someone other than the defendant was the source of . . . injury, or other physical evidence").

Knudsen challenges the court's ruling that he could not expand the scope of the questioning about the prior sexual abuse in order to introduce evidence that A.M. had reported the prior abuse to her mother and Knudsen and they had supported her through a criminal trial, which ultimately resulted in the conviction of a family member. Knudsen raised a number of reasons why he believed the evidence was relevant and probative during his many challenges to the court's ruling, including that Knudsen's support of A.M.'s previous report of sexual abuse made it less likely Knudsen sexually abused A.M. and that A.M.'s ability and willingness to report the previous instances of sexual abuse made it less likely to believe her reasons for not reporting Knudsen's sexual abuse sooner—thereby calling into question her credibility about the allegations in general.

In determining if the district court should have allowed the broader scope of evidence Knudsen advocates for under the exception to the rape-shield law, we apply "a balancing test, identical to that contained in rule 5.403." *See State v. Edouard*, 854 N.W.2d 421, 449 (Iowa 2014), *overruled on other grounds by Alcala v. Marriott Int'l., Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016). Pursuant to rule 5.403, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger" of unfair prejudice. When asked to consider the evidence, the district court found it was not even relevant, stating:

> Whether [A.M.'s] been through it before or not, it doesn't mitigate the fact that she can be scared about [reporting the abuse] against [Knudsen]; or the fact that she's been through it before doesn't necessarily mitigate the fact that it would be embarrassing in this particular circumstance again; or for any of the other reasons

she's indicated on the record here; and I must balance what you're telling me with that of the issues that are aimed to be protected by this rule, . . . and in doing that, again, I don't find that it's appropriate when conducting the balancing test to allow it in.

We agree with the district court. Although Knudsen assumes otherwise, neither A.M.'s willingness to report previous sexual abuse nor Knudsen's reaction to it make it more or less likely that Knudsen sexually abused A.M. *See* Iowa R. Evid. 5.401 (providing evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence"). Moreover, even if it is relevant, the probative value of the evidence Knudsen wants to admit is outweighed by the danger of unfair prejudice. Knudsen is correct that credibility is an important issue in a sexual abuse case, but that does not mean it is his constitutional right to place the victim on trial. *See Awbery*, 367 P.3d at 349 (stating the rape shield law is "designed to prevent the trial of the charge against the defendant from becoming a trial of the victim's prior sexual conduct"). Knudsen has not convinced us the expanded scope of evidence he argues was admissible falls within the "narrow exception" to the rape-shield law. *See State v. Jeffries*, 417 N.W.2d 237, 239 (Iowa Ct. App. 1987).

### C. Defense Expert.

Knudsen challenges the district court's evidentiary ruling prohibiting Hollinda Wakefield from testifying that three-way sexual abuse interactions involving a child and the child's mother are rare. The district court excluded the evidence for two reasons; it found Knudsen had failed to establish Wakefield was an expert in the area in question and found the evidence to be impermissible as an expert indirectly commenting on the credibility of the witness.

We generally review evidentiary rulings for an abuse of discretion. *See State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014).

While Iowa is committed to a liberal view on the admission of expert testimony, "expert testimony is not admissible merely to bolster credibility." *State v. Dudley*, 856 N.W.2d 668, 676 (Iowa 2014). "Our system of justice vests the jury with the function in determining credibility." *Id.* "[W]hen an expert comments, directly or indirectly, on a witness's credibility, the expert is giving his or her scientific certainty stamp of approval on the testimony even though an expert cannot accurately opine when a witness is telling the truth." *Id.* at 677.

While Knudsen maintains Wakefield's testimony would have aided the jury in making its own credibility determination, we believe the testimony Knudsen wanted to elicit "go[es] a step beyond merely aiding the fact finder in understanding the evidence and actually invade[s] the exclusive domain of the jury." *State v. Myers*, 382 N.W.2d 91, 95 (Iowa 1986). Knudsen's purpose in calling Wakefield to make the statement was to convince the jury A.M. was not credible, as it is "rare" for abuse to happen as A.M. described. Thus, even if Wakefield was qualified as an expert in the area in question, her testimony about the rate of occurrence of sexual abuse that A.M. alleged would be impermissible as it constitutes indirect statements on the credibility of the complaining witness. "[W]eighing the truthfulness of a witness is a matter reserved exclusively to the fact finder." *Id.*

"[O]ur system of justice does not rely upon statistical probability of certain conduct absent scientifically proven principles." *State v. Pitsenbarger*, 14-0060, 2015 WL 1815989, at *8 (Iowa Ct. App. Apr. 22, 2015). The court did not abuse

its discretion when it prevented the defense's expert from using rate of occurrence to question the credibility of A.M.

### D. Sentencing Enhancements.

Knudsen maintains his stipulation to his prior conviction for sexual abuse in the third degree and the resulting enhancements were not entered into knowingly and voluntarily, as the colloquy with the court failed to satisfy certain requirements. *See State v. Harrington*, 893 N.W.2d 36, 45–47 (Iowa 2017).

In *Harrington*, our supreme court outlined what steps the district court must take during a stipulation colloquy to ensure the stipulation is entered into knowingly and voluntarily. 893 N.W.2d at 45–47. Although *Harrington* was not yet filed at the time of Knudsen's colloquy, we have applied the requirements of the enhanced-penalty hearing retroactively. *See State v. Allie*, No. 17-0190, 2018 WL 739297, at *6 (Iowa Ct. App. Feb. 7, 2018); *see also State v. Miller*, No. 16-2110, 2018 WL 1099580, at *8 (Iowa Ct. App. Feb. 21, 2018). We apply the error-preservation requirement of filing a motion in arrest of judgment prospectively only. *See State v. Steiger*, 903 N.W.2d 169, 170 (Iowa 2017).

It is undisputed that the court failed to ensure Knudsen's prior conviction was obtained while he was either represented by counsel or had knowingly and voluntarily waived the right to counsel. *See Harrington*, 893 N.W.2d at 45. Additionally, the court did not inform Knudsen that an enhancement doubled the maximum period of incarceration on count IV—from one year to two years—and that the sentence for counts I, II, and III carried a mandatory minimum of life sentence without the eligibility of parole. *See id.* at 45–46.

Still, the State argues we should not grant Knudsen the requested relief because he "invited error" when the court asked if there was anything that had been omitted, to which Knudsen stated, "No, Your Honor," Additionally, the State argues Knudsen was not prejudiced by the failures in the colloquy. As to the State's first argument, the State has provided no authority supporting the claim that a defendant's inability to find immediate fault with the court's colloquy prevents the defendant from challenging it later. It is a common practice to ask such a question at the end of a colloquy—one we find no fault with, as it may help prevent simple errors of oversight.[5] But if the State's assertion is correct, it would behoove defendants not to answer the court's question, thereby actually inviting the error the State asserts Knudsen invited. Moreover, as *Harrington* was not yet decided at the time of Knudsen's stipulation, Knudsen may not, at the time he was asked, have found any error with the court's colloquy. As to the State's argument that Knudsen is not entitled to relief because he suffered no prejudice, the supreme court has already rejected this argument. *See id.* at 43 n.2 ("The question on appeal is not whether [the defendant] suffered no prejudice because evidence existed to establish the prior convictions, but whether [he] knowingly and voluntarily admitted the prior conviction."). "In the absence of a substantially compliant colloquy, it cannot be said the defendant's stipulation of the prior convictions was knowing and voluntary." *Allie*, 2018 WL 739297, at *6. "Prejudice is simply immaterial to the question presented." *Id.*

---

[5] The State was asked the same question and also replied in the negative.

Because the district court did not comply with the *Harrington* requirements for the enhancement stipulation colloquy, we affirm the convictions, but "reverse the judgment[s] and sentence[s] of the district court for further proceedings consistent with this opinion or, if [Knudsen] denies the prior convictions or their validity, for trial on whether he meets the requirements" of the enhancements pursuant to section 902.14(1)(b). *See Harrington*, 893 N.W.2d at 48.

### III. Conclusion.

Substantial evidence supports Knudsen's challenged conviction for sexual abuse in the third degree, the district court did not wrongly apply the rape-shield law to prevent the further introduction of evidence regarding prior sexual abuse perpetrated against A.M., and the district court did not abuse its discretion when it prevented the defense's proposed expert from testifying how "rare" the type of sexual abuse described by A.M. occurs. We affirm his convictions for the three counts of sexual abuse in the third degree and one count of lascivious conduct with a minor. However, because we cannot say Knudsen entered into the prior-offense stipulation knowingly and voluntarily, we reverse the enhancement judgments and sentences of the district court. On remand, Knudsen may enter into a new stipulation regarding the prior offense compliant with *Harrington* or may choose to proceed to trial to determine whether he meets the enhancement requirements.

**JUDGMENT AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED FOR ENHANCEMENT HEARING, SENTENCING, AND JUDGMENT.**